(78 South. 589)

No. 22498.

BEHAN v. JOHN B. HONOR CO., Limited, et al.

(June 30, 1917. On Rehearing, April 29, 1918.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⟨⟩376(2)—EMPLOYERS' LIABILITY ACT — COMPENSATION — LATENT DISEASE.

The fact that an employé, injured in performing services arising out of and incidental to his employment in the course of his employer's occupation, was already afflicted with a dormant disease that might some day have produced physical disability is no reason why the employé should not be allowed compensation, under the employers' liability statute, for the injury which, added to the disease, superinduced physical disability.

*(Additional Syllabus by Editorial Staff.)*

2. MASTER AND SERVANT ⟨⟩385(20)—EMPLOYERS' LIABILITY ACT—AMOUNT OF COMPENSATION.

Where the wages of an employé were such that it was impracticable to compute the "average weekly wages" by the method first indicated in Employers' Liability Act (Act No. 20 of 1914) § 3, the compensation allowed on the alternative statutory method of taking the average weekly amount earned by another employé in the same grade, employed at the same work un-

der the same employer during the 12 months preceding the accident, was so nearly accurate that it would be approved.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Suit by John Behan, employé, against the John B. Honor Company, Limited, employer, and the New Amsterdam Casualty Company, insurer, for compensation under the Employers' Liability Act. Compensation allowed, and defendants appeal, and plaintiff, answering the appeal, prays that the compensation be increased to the amount sued for. Judgment affirmed.

J. C. Henriques, of New Orleans, for appellants. E. M. Stafford and Howell Carter, Jr., both of New Orleans, for appellee.

O'NIELL, J. While the plaintiff was working as longshoreman for the John B. Honor Company, a skid that he was attempting to remove from the ship to the wharf slipped and caused him to fall into the river. He fell upon some wooden piling or stringers and hurt his head and spine. This suit was brought against the employer and the latter's liability insurer, for compensation, under the Employers' Liability Act, Act No. 20 of 1914. The plaintiff claimed compensation at the rate of $10 a week for 400 weeks, less certain payments he had received. The district court allowed him compensation at the rate of $6.50 a week, for 400 weeks, less the credits. The defendants prosecute this appeal; and the plaintiff, answering the appeal, prays that the compensation allowed be increased to the amount sued for.

The only defense urged—and it was not specially urged in the answer of either of the defendants—is that the plaintiff's disability was not caused by the accident, but is the result of a disease that was lurking in his system before the accident.

There is scientific evidence in the record that the plaintiff was, after the accident and at the time of the trial, afflicted with locomotor ataxia—what physicians call tabes dorsalis—and that an accident such as the one on which this suit is founded could not, of itself, have produced that disability. But it also appears from the expert testimony that the one and only disease that does cause locomotor ataxia can remain dormant and undiscovered in the human system a very long time; that there have been cases where the disease did not assert itself within 20 years from the time of infection. There is no proof in this case that the plaintiff would be now or ever disabled by locomotor ataxia if the accident he complains of had not happened. On the contrary, until the accident, he was apparently in ordinary sound health, attending to his daily occupations, unconscious of being diseased, working regularly, earning large wages, and supporting his wife and daughter. The injuries he suffered by the accident, and the immediate change in his physical condition, leave no reasonable doubt that the accident superinduced, and was the proximate cause of, the disability of which he complains. He was rendered unconscious by the injury to his head and spine, and remained unconscious more than 24 hours after the accident. The surgeon who first attended him at the hospital found that he had concussion of the brain. He remained in the hospital two weeks, and was then taken in an ambulance to his home, not that he had recovered sufficiently, but because, as the surgeon in charge of the hospital testified, "About that time some change was made in the company handling these cases." His arms and legs were yet paralyzed, and he remained confined to his room, physically helpless, in the care of a physician, nearly two months longer. The paralysis that had immediately followed the accident was succeeded by, as if it had developed into, what the attending physician suspected was locomotor ataxia, or tabes dorsalis. On his ad-

vice, a specialist on nervous and mental diseases was consulted, and his diagnosis and tests confirmed and proved the correctness of the opinion of the attending physician.

The proof goes no further, in support of the defense of this suit, than to show that the plaintiff might, and perhaps would, at some time, have become disabled by the disease that was lurking in his system, even if the accident complained of had not happened. And that is not much more of a defense than to say that every man must some day come to the end of his worldly career, accident or no accident.

[1] The evidence leaves no doubt that the plaintiff's physical disability resulting from the accident is worse than it would be if he had not been diseased at the time of the accident. But the accident was, none the less, the proximate cause of the present disability. We are not aware of a decision of this court on the subject, but it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability. See Hilliard v. Chicago City Railway Co., 163 Ill. App. 282; Larson v. Boston Electric Railroad Co., 212 Mass. 262, 98 N. E. 1048.

The rulings in the two cases cited by the learned counsel for the defendants, decided by the Industrial Accident Commission of California (Hansen v. Patterson Ranch Co. and Johnson v. Lowe, vol. 2 Reports of Industrial Accident Commission of the State of California, pp. 767 and 543), were based upon facts that distinguish them from the present case. In Hansen's Case, it was proven that the disability due to the accident could not have lasted longer than three weeks, and that the remaining disability was due to the onset of paresis. In Johnson's Case, the proof was that the 7 weeks, for which compensation was allowed, was ample time for complete recovery from the injury complained of, being an injury to his wrist, and that the remaining ailment was due to a disease that he had before the accident.

[2] The plaintiff worked some times as screwman and some times as longshoreman. As screwman his wages were $6 a day, and as longshoreman 40 cents an hour for a day of 10 hours, 60 cents an hour for night work, and 80 cents an hour on Sundays. The evidence is that he had a good reputation as a workman, and his services were in demand. Hence it seems that his average weekly wages should have been enough to allow him compensation at the maximum rate of $10 a week. But the Employers' Liability Act is so worded that it would be extraordinary for any laboring man to show that his average weekly wages amounted to enough to allow him the maximum rate of compensation. The plaintiff in this case, like most of the longshoremen, worked for a number of stevedores. During the year preceding the accident, he had worked principally as screwman; but, at the time of the accident, he was employed as longshoreman. It was therefore impracticable to compute the "average weekly wages" by the method first indicated in section 3 of the Act No. 20 of 1914. The judge adopted the alternative method, provided by the statute, of taking the average weekly amount earned by another employé in the same grade, employed at the same work and by the same employer, during the 12 months preceding the accident. Accordingly the rate of compensation allowed by the judgment is so nearly accurate that it is approved.

The judgment appealed from is affirmed at the cost of the appellants.

LECHE, J., takes no part.

On Rehearing.

LECHE, J. We have considered again the issues presented in this case, and do not find any error in the judgment.

The decree heretofore rendered is reinstated and made final.

O'NIELL, J., was absent during the argument on rehearing. ·