No. ——

First Circuit Appeal

## JOHN HARRISON v. NORMAN BREAUX LUMBER CO.

(Jan. 21, 1925, Opinion and Decree.)
(Feb. 18, 1925, Rehearing Refused.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Master and Servant— Par. 158.**
Where an employee's leg is injured and nearly a year later his leg is amputated the proof showing that the possibility that the amputation was caused by the accident is very remote and improbable, the injured employee cannot recover compensation under the Employer's Liability Act, No. 20 of 1914.

2. **Louisiana Digest—Master and Servant— Par. 158.**
Where an employee's leg is injured and nearly a year later his leg is amputated, it being proven that the cause of the amputation was due either to bad circulation, poor blood supply, which may have resulted from age, hard labor, or syphilis, the injured employee cannot recover compensation under Employer's Liability Act, No. 20 of 1914.

Appeal from the parish of St. Mary, Hon. James Simon, Judge.

This is a suit for compensation under the Employer's Liability Act No. 20 of 1914. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Chas. J. Mundy of Franklin, attorney for plaintiff, appellant.

Paul Kramer of Franklin, attorney for defendant, appellee.

LECHE, J. Plaintiff was in the employ of defendant as a laborer near Morgan City, in the parish of St. Mary, and on November 15, 1922, was injured and he sues for compensation under the Employer's Liability Act.

At the time of the accident plaintiff was carrying bricks and placing them upon a scaffold, which gave away under load, and he fell to the ground with the bricks. He says that he received severe contusions, bruises and cuts on his leg. Other witnesses say that the injury was apparently very slight and consisted merely of an abrasion of the skin on his leg.

After his fall plaintiff got up, went off and sat down. He then returned home and did not again present himself to resume his work until February 28, 1923.

During this time, he consulted Dr. De-Gravelle and he received in wages from defendant, eighty one 60/100 dollars. He then, came back and worked six or eight days. After leaving defendant in March 1923, he went to work for J. N. Pharr's Sons on Avoca plantation where he worked for two or three months, then went to New Orleans and his leg was amputated at the Charity Hospital the latter part of October, 1923.

The question of fact which controls the decision of this case is whether the injury received by plaintiff on November 15, 1922, was the sole cause or a contributing cause which necessitated the amputation of his leg at the Charity Hospital in New Orleans.

In the case of Haddad vs. Commercial Motor Truck Co., 150 La. 327, 90 South. 666, it was held that "In a proceeding under the Workmen's Compensation Act to obtain compensation for death of servant, it is not enough to show that death was probably the result of an accident, but that such was the case must be made out to a legal certainty."

In cases where a person is afflicted with some constitutional disease, it must appear that the accident was the proximate cause of the injury, that the disease was accelerated or brought into activity by the accident or that the accident added to the disease, superinduced the physical disability. Johnson vs. Vernon Parish Lumber Co., 151 La. 665, 92 South. 219; Fox vs. United Chemical & Organic Products Co., 147 La. 865, 86 South. 311; Behan vs. Honor Co., Ltd., 143 La. 349, 78 South. 589.

The history of the injury is not clearly established, but some facts in regard thereto are not contested. Plaintiff did not lose control or use of his leg after the accident which apparently only produced a slight and bloodless abrasion of the skin. Evidently there must also have been a bruise of the flesh or muscles of the leg, but to what extent, is impossible to determine from the record. The witnesses who were near the scene, did not believe from what they saw that plaintiff had been badly hurt. As to his physical condition previous to the accident, plaintiff testifies that he had been injured by a wagon tongue several years before, but that this injury was on the other (his left) leg and that it had healed, that his blood was clear or free from syphilitic taint.

Mr. N. G. Johnson, an employee of defendant for several years, testifies that plaintiff had a sore leg previous to the accident but does not know on which leg was the sore.

Mr. K. S. Foster, employed by the U. S. government and paymaster for Pharr's Sons, knew plaintiff when a laborer on Avoca plantation. Plaintiff then had an ulcerated sore leg and told Mr. Foster that this sore had been there a number of years.

Dr. DeGravelle, who treated plaintiff immediately after the accident of November 15, 1922, testifies that there was only a slight abrasion of the skin. He noticed evidence of a large area of former chronic sores on plaintiff's leg. He treated plaintiff from November 28, 1922, to February 16, 1923. He says there was no necessity for this long treatment, but that plaintiff did not follow his instructions, that plaintiff went about, did not observe the quiet and rest which he had prescribed, that plaintiff also applied poultices of leaves and other nostrums on the sore thereby retarding the healing process.

He admits the possibility that the injury from the fall, might have been a contributing cause which necessitated amputation of plaintiff's leg but did not consider it at all as probable. He did not believe that there was any connection between the injury of November 15th and the amputation.

Dr. O'Niell treated a sore, the size of a half dollar on plaintiff's leg, between February and September, 1923. He saw plaintiff three or four times, there was old scar tissue all around the sore. He has no idea of the cause of the sore. It was stubborn and repair is very slow in that kind of a sore. From appearances there had evidently been a sore prior to this one because there was quite a bit of scar tissue around on the outside.

Dr. Gessner, who amputated plaintiff's leg, at the Charity Hospital in New Orleans, says in substance, that when he first saw plaintiff in the hospital, there was a sloughing of a muscle along the front of the leg, the tibialis anticus. He cut down to the periostium where he found some thickening of the surface of the bone and simply removed the sloughing tendon and muscle. The foot then became gangrenous and he had to amputate higher up, at the knee. The sloughing of that muscle could not have been due to an injury inflicted one year before. He could see no connection in the amputation of the leg with the injury received a year previous. The nearest he could come to

the cause of this condition of the leg, was bad circulaion in the leg and poor blood supply, which may have resulted from age, hard labor or syphilis, he could not say which, though the Wasserman test showed negative. That condition could not be due to trauma, a year before, though such is a very remote possibility.

It thus appears from all the evidence in the case, that plaintiff had been able to prove merely the possibility that the injury which he alleges to have received on November 15, 1922, was the cause which necessitated the amputation of his leg and this possibility in the opinion of medical experts, is very remote and improbable, and it is apparent from this fact and the law as construed by the Supreme Court, that this court would not be justified in allowing plaintiff any compensation under the Employer's Liability Act.

The judgment of the district court was in favor of defendant and it is

Affirmed.