No.——

First Circuit

---

BROUSSARD v. UNION SULPHUR CO.

---

(Jan. 7, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant —Par 160, 160 (j).

A widow can recover compensation under the Workmen's Compensation Act No.

20, 1914, section 8, sub-section 2, for the death of her husband, where it is shown that he was afflicted with a dormant disease when he suffered the injury which caused this disease to develop into a malignant cancer causing his death.

2. **Louisiana Digest—Master and Servant —Par. 160 (l); Appeal—Par. 625.**

The finding of the trial court on a matter of fact, that the injured employee's death was caused by the development of a disease which was dormant before the accident but was aggravated by the injury, being eminently correct, is affirmed.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926. Editor's note.)

Appeal from Calcasieu Parish. Hon. Thos. F. Porter, Jr., Judge.

Action by Dauterive C. Broussard against The Union Sulphur Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

R. R. Stone, of Lake Charles, attorney for plaintiff, appellee.

Cline & Plauche, of Lake Charles, attorneys for defendant, appellant.

MOUTON, J. Plaintiff filed this suit under the Employers' Liability Act, on October 16, 1925. He died before trial, and by supplemental pleadings under proper allegations, his widow was made plaintiff. The complaint is based on two accidents; one that occurred on March 5, 1925, and the other on May 19, 1925. The employment of deceased is admitted; also the accidents as described in the course of the employment of deceased, but defendant denies that the injury was of the character alleged.

D. C. Broussard, original plaintiff, died in November, 1925, of cancer. The record, which is voluminous, consists mostly of the opinion of physicians. In touching upon their views we shall limit our discussion to the vital question presented for decision. At the outset and before entering into our appreciation of the evidence, it may be proper to say that the medical experts who testified in the case, agree on the proposition that the cause or origin of cancer is unknown. In connection with this statement, it is also proper to say that it is not contended by plaintiff that the injury which her husband received, caused or originated the cancer from which he died. Her contention is that the injury he suffered, excited, set in motion or activated the cancerous cells which resulted in a cancerous growth and the spreading of the disease in his system, finally resulting in his death. It is not disputed that the cancer of which Mr. Broussard died was in his lymph or axillary gland, which is located in the armpit. The cancerous cells were indisputedly there at the time of the accident, as the experts all agree that the injury could not have caused or originated the cancer. Therefore, the question is as to whether these cancerous cells were at that time in a dormant or quiescent condition and that by the injury or its effects, were activated, excited or set in motion, thus starting them on their mission of destruction. It is on a determination of this issue, as we understand the case, that its proper solution depends.

On March 5th, when the first accident occurred, deceased was the last of six men carrying a five-inch pipe, twenty-two feet long, which was resting on the right shoulder of the deceased and was held up with his upraised hands. In crossing an obstruction by means of a board, three of the men immediately in front of him, lost

their footing and the weight of the pipe suddenly descended on his shoulder. Deceased staggered under this sudden jerk but did not fall. He immediately said he had hurt his shoulder. The pain was acute where the arm joins the shoulder and extended back through the shoulder. He continued work until 5 o'clock and then reported to the physician that he had "twisted" his shoulder, that it "cramped" him but that he thought he was not hurt much. In the night following the day of this accident on March 5th, plaintiff says he woke up and could feel a little soreness under his arm "as what generally comes from a bruise and hurt"; that he bathed his shoulder and under his arm with the liniment. The next morning he went to work, had a kernel under his arm which, during that day continued to swell, and which grew up to the size of a hen's egg. In about ten days after this accident this "kernel" or "lump" had diminished to the size of a marble, leaving only that much swelling under his arm. Thereafter, on May 19, 1925, while deceased was carrying heavy junk on his right shoulder he suffered a similar injury and the same pain he had experienced on March 5th. This "lump," which had fallen to the size of a marble, again began increasing and as had been the case in the prior accident, grew up to the size of a hen's egg. The pain became so acute deceased had to lay off from work in the month of July. Later, an operation was performed on deceased by Dr. Holcomb of Lake Charles, who removed part of this swelling from the axillary space where it was located. In November following Mr. Broussard died of cancer.

The facts we have hereinabove given in reference to the appearance and growth of this lump or swelling on the two occasions mentioned were taken from the testimony of Mr. Broussard, which was given on his death bed. The truthfulness of his statement is not questioned. Mr. Broussard testified that during his boyhood he had suffered at times with kernels such as the evidence shows are usually experienced by most individuals at that period of life. He had, however, never suffered with a kernel in his arm pit under his right shoulder prior to March 5, 1925. It also appears by the testimonies of Mrs. Broussard, his widow, and his daughter, Miss Stella Broussard, that prior to the date of that accident, he had never, to their knowledge, complained of any lump or kernel under his arm. His fellow laborers in defendant's mine also testified that at no time prior to March 5th, had Mr. Broussard complained of any such ailment as far as they knew. Hence, it may be stated with absolute certainty that prior to that date deceased was free from any such complaint.

The contention of the defendant company is that this swelling, kernel or lump was actually in the arm pit of the deceased at a time prior to the accident of March 5th; that the pain he suffered merely attracted his attention to the afflicted spot or area and that he then discovered the existence of this kernel; that as such was and must have been the case, and that the cancerous growth existed, had taken form or shape at that time, was then in a state of progression and being in that condition, the injury merely accelerated the virulent movement of these cells, but did not start, activate or set them in motion from a quiescent or dormant condition.

It must be noted as we enter into the analysis of this proposition that Mr. Broussard said that on the very night after the accident of March 5th, that he woke up and felt a soreness under his arm and

applied some liniment to the affected spot which seemed to be a bruise or hurt. Is it to be believed for a moment that if a kernel or lump had then been in that area that, notwithstanding the bathing of it with liniment, the deceased would have failed to notice or discover such a swelling? The only logical inference from this state of fact is that these cancerous cells had not yet taken shape in the form of a growth, had been merely awakened from their dormant condition by the disturbance which had occurred in these cells caused by the "twist" or "wrench" of the shoulder which deceased had suffered. If such a lump had existed prior to March 5th, is it reasonable to believe that deceased, who was engaged at defendant's mine in handling heavy pipes and junk, would not have previously suffered from such a swelling of his lymph gland under that arm? If not, why then did he feel acutely during the very night following the accident a pain in that region and at a time when there was a mere soreness, and when the cancerous cells had not yet taken the form or shape of a lump or kernel?

Some physicians, eminent in their profession, who testified as experts in the case, take the position that this lump was in the arm pit of deceased before March 5th, and that the cancerous cells had already been set in motion or activated when the accident occurred. They say that within their experience it has happened that persons have come to them for medical advice, complaining that by reason of some knock, bruise or sudden jerk, a lump, swelling of a gland or kernel had been caused thereby. They refer to causes in which women, particularly, have complained of a sudden lump on the breast which they would ascribe to the causes above referred to. Their conclusion is that in such cases, such lumps or swellings, had in such subjects existed at a time prior thereto and unknowingly to them, and that the injury or accident to which they were ascribed had merely called their attention to their existence.

It may be that in the cases of the character above described that the patients are often led to such discovery of some pre-existing condition by having, in the manner stated, their attention directed thereto. In a case like this, however, where a person having a lump of the character described in a lymph gland under the armpit which became so acutely sensitive immediately after two accidents, it is hard to believe, could have handled such heavy work as a laborer in defendant's mine as was shown, and yet could have remained in total ignorance of the existence of such a condition. We cannot reconcile ourselves to such a conclusion.

The facts above referred to lead us to a contrary view, and more so from the fact that several of the medical experts said, after a thorough consideration of the subject in answer to many hypothetical questions propounded to them, that the "twist" or "wrench" of Mr. Broussard's shoulder could have set in motion or have activated these cancerous cells from a quiescent or dormant condition, thus disseminating them through his system with the fatal results which followed.

The district judge, after a thorough analysis of the facts, adopted that view in an able written opinion. We have, after a careful examination of the record, reached the same conclusion on the facts, which show that deceased was afflicted with a dormant disease when the injury was inflicted on him by the accident of March 5, 1925, which might never have developed; that the cells of this dormant disease were vitalized by this accident and

in a short while caused his death for which his widow is entitled to recover under the rule recognized in Behan vs. John B. Honor Co., 143 La. 348, 78 South. 589; Donahue vs. Scharfenstien & Son, 154 La. 815, 98 South. 256, as was held below.