No. ——

**First Circuit**

**JOHNSON v. FOREST LBR. CO.**

(June 7, 1927. Opinion and Decree.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 159, 160j.**

Where the evidence in a Workmen's Compensation case under Act 20 of 1914 as amended clearly shows that cancer of the liver could not be superinduced by an injury to the arm and that such injury could not have hastened the death on account of such cancer there can be no recovery for compensation on account of the injury.

Appeal from Allen Parish. Hon. Jerry Cline, District Judge.

Action by Alice Monk Johnson against Forest Lumber Company.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

MOUTON, J. Reyland Johnson was injured in the latter part of July or in the beginning of August, 1925, while in the employ of defendant company. He died of cancer, November 24, 1925, at the Charity Hospital in New Orleans.

This suit is brought by Mrs. Alice Johnson, his surviving wife, under the Workmen's Compensation Act. Her demand was rejected. She appeals.

In her original petition plaintiff alleged that deceased "accidentally got his left arm bruised and injured in a fall which fall also injured his nerves, heart, lungs and other parts." On an exception of vagueness this petition was amended. In her amended petition she amplified the original pleadings and alleged that the accidental injuries she had originally averred had caused mestastasis of the right lung and carcinoma of the liver; that the said injury to his right arm either brought on all of said injuries and impairments and diseases or greatly increased, augmented and accelerated pre-existing troubles which caused his death.

Dr. J. H. Munser, professor of medicine at Tulane University, was the attending physician to Riley Johnson at the Charity Hospital from November 16 to the time of his death. He said that he died of cancer or carcinoma of the liver. As to mestastasis of the lungs which plaintiff alleges her husband suffered with, Dr. Munser explained that this was secondary cancer which had been caused by the cancer cells getting into the circulation of the lungs.

In answer to a question propounded to him, he stated with absolute positiveness that an injury to the arm of the

deceased could not have superinduced cancer of the liver nor could such an injury have hastened the death of Johnson on account of such a cancer. There was not the least hesitancy or equivocation in the statement of that eminent physician that such a cause could not bring about such results. There is no expert evidence in the record which is contradictory to the opinion of Dr. Munser on this subject. This testimony was taken in New Orleans two days prior to the trial of this case. That testimony was directed principally to the question as to whether cancer of the liver could be produced or the death of the deceased could have been accelerated by the injury he had received on his arm. The opinion of the physicians, as hereinabove stated, negatived the idea that either cancer or hastening of the disease could have resulted from an injury of that character. It seems to us, speaking as laymen, that a blow to or bruise on the arm could not possibly cause a cancer of the liver, or could have aroused the cancer cells, if at the time of the injury they were in a dormant or quiescent condition.

The proof shows that deceased was working around the dry kilns. It was shown that at times, deceased was exposed to terrific heat while in the performance of his services. Plaintiff endeavored to show that the great heat to which deceased had been occasionally subjected could have produced the cancer from which he died. It was shown by the testimony of the physicians that after many experiments to ascertain whether cancer could be produced by such a cause, the medical profession had concluded that it could not under any condition or circumstance. E. A. Smith, a fellow workman of deceased at the kiln, testified as to the manner in which deceased received his injury. He says deceased fell in a hole, was bruised by a 2x12 piece of lumber or timber that struck him on the arm, and that deceased claimed his side was hurt. His wife testifies that when he came back from a visit to the doctor after he received his injury, that she noticed "a red streak across his stomach." Other witnesses testified that they had seen such a streak on his side or stomach or had observed that his stomach was swollen. Such a streak or distended stomach had never been seen or noticed before the accident by his wife or any of his acquaintances, the record shows. There is no evidence to show the character of the injury which deceased received on his side, and that it could have caused a cancer. The evidence indicates that the cancer existed at a time prior to the accident. It must therefore have been in a dormant state when the injury was inflicted. We are now referring to the injury deceased suffered to his "side" as the expert testimony makes it quite clear that the blow to his arm could not have caused or accelerated the cancer. One of the witnesses testified that this injury was on his left side, which is opposite of the side where the liver is located. Dr. Scott, while testifying for defendant company was asked if deceased had suffered a severe injury around the liver, assuming that a cancer existed at the time, if thereby it could be increased or accelerated. His answer was that it might. We have no stronger evidence than that in the record to authorize the conclusion that the cancer could have been set in motion or activated by such an injury. In the recent case of Broussard vs. The Union Sulphur Company, 5 La. App. 340, we had occasion to pass on issues in some respects similar to those presented in the instant case. See Advance Rep., La. Courts of

Appeal, Vol. 5, No. 15, p. 340, March, 1927. It was shown in that case that Mr Broussard's shoulder was twisted or wrenched by a blow from a heavy pipe he was carrying with others. The next morning, a lump or kernel had developed in his arm pit from which he suffered intense pains. From these physical facts we inferred that there was a close connection between the injury and the immediate development of the kernel under the arm. A number of physicians who testified in the case, as experts, said that this twist or wrench of the shoulder could have activated the cancerous cells, disseminating them in Mr. Broussard's system, thus hastening his death. We held in that case that the deceased was afflicted with a dormant disease when the injury was inflicted with otherwise might never have developed; that the cells of that dormant disease had been vitalized by that accident and in a short while had caused Mr. Broussard's death, citing in support of our conclusion Behan vs. John Honor, 143 La. 348, 78 South. 589; Donahoe' vs. Scharfenstein & Son, 154 La. 815, 98 South. 256.

The facts of this case do not support such a conclusion, and the judgment rejecting the demand of plaintiff is therefore affirmed.