No. 920

First Circuit

___

## WOODS v. LAKE CHARLES COMPRESS & WAREHOUSE CO., INC.

___

(February 8, 1932.   Opinion and Decree.)
   (March 8, 1932.   Rehearing Refused.)
(April 25, 1932.   Writs of Certiorari and Review Refused by Supreme Court.)

___

M. R. Stewart, of Lake Charles, attorney for plaintiff, appellant.

C. V. Pattison, of Lake Charles, attorney for defendant, appellee.

MOUTON, J.   The opinion of the district judge is as follows:

"Sam Woods, plaintiff, while working for the defendant, was rapidly pushing an empty truck across the warehouse floor, when the flange or some part of the bottom of the truck struck an obstruction on the floor. Momentum caused the truck to fall forward, with the plaintiff on top of it. On the bottom side of the truck are two projections, which rest on the floor when the truck is in a horizontal position. Since the truck turned over in a forward direction, it fell with these projections sticking upward, and plaintiff fell with his stomach on one of them, causing a hernia.

"The plaintiff underwent an operation, for the hernia, which was entirely successful, and the defendant paid all expenses in connection with the operation, as well as compensation for the time during which the plaintiff suffered disability from the hernia.

"Woods alleges that when he fell with the truck, his head struck the floor, causing severe head injuries in addition to his other hurts, all of which he now claims activated a dormant case of syphilis, which plaintiff claims caused paresthesia of the entire left side of his body.

"That plaintiff now has paresthesia of his left side is clearly shown by the record, and was demonstrated by the severest sort of tests conducted in my presence. It is not contested that plaintiff is disabled to perform any sort of work.

"Defendant urges that Woods' disability is due solely to syphilis, of which he now suffers, the Wasserman test showing a plus four.

"Counsel for plaintiff, in urging the extent of plaintiff's injuries, claims that plaintiff's head struck the floor, at the time of the accident, with such violence as to cause him to become unconscious, and he cites the testimony of Fontenot (Tr. 17) and that of the plaintiff (Tr. 23) on this point. This witness and Keys, another colored man, testified that they saw blood coming from plaintiff's mouth and nose (Tr. 19, 20).

"Fontenot testified that plaintiff did not work after the accident, and on this important point he is contradicted by the white witnesses Quirk and Reese (Tr. 49, 51) both of whom testified plaintiff trucked bales of cotton after the accident.

"Fontenot and Reese, in their testimony as to the blood on plaintiff's face, are contradicted by Quirk and Lewis (Tr. 49, 52).

"Plaintiff gave to the physician, Dr. White, who attended him throughout his trouble, no history of any head injury (Tr. 40), and he made no such complaint to his wife (Tr. 47), nor to Palmer (Tr. 47) the latter seeing him right after the accident. The plaintiff complained of injuries to his side, not his head. (Quirk, Tr. 49; Reese, Tr. 51.)

"All of the above testimony, taken together with the statement of Reese that plaintiff was not unconscious (Tr. 51), and the fact that plaintiff continued for about twenty minutes after the accident to truck bales of cotton (Tr. 47) leads me, to conclude that he was never unconscious, and sustained no considerable, if any, injury to his head.

"The record clearly shows that plaintiff was a strong, husky man, before the accident, able to do heavy and hard work, and that an examination given May 26, 1927, preliminary to obtaining a marriage certificate, showed no disease or abnormal condition (Dr. Hayes, Tr. 6). Another examination, by Dr. Combre, in February, 1930, also showed no evidence of disease (Tr. 11). Plaintiff now weighs 20 to 25 pounds less than he did before the accident.

"The fall on the truck, which struck a truck heel into plaintiff's side, immediately caused a hernia (Tr. 40). This showed through his clothes (Tr. 18).

"Drs. Hayes and Combre, the colored doctors, were of the opinion that the blow in the side could have caused his present condition (Tr. 7, 8, 13, 14). Dr. Tuten, who first saw plaintiff about November 1, 1930, was of the opinion that plaintiff's injuries caused his trouble (Tr. 31). Dr. Watkins, who operated on the plaintiff, was of the opinion that there is no connection between plaintiff's paresthesia and his injuries, and that his present condition is due wholly to disease (Tr. 33, 34). This is also the opinion of Dr. Holcombe (Tr. 37) and Dr. White (Tr. 42).

"Dr. Tuten admitted that a patient with syphilis, showing a Wasserman plus four, often is in plaintiff's condition, without any injury at all (Tr. 31). That this is so is shown by the testimony of Dr. Watkins (Tr. 36) and Dr. White (Tr. 42).

"The plaintiff was injured September 9, 1930, and the case was tried April 17, 1931. Six weeks prior to the trial, or say March 1, 1931, plaintiff had no paresthesia (Dr. Watkins, Tr. 33). On April 2, 1931, according to Dr. Hayes, plaintiff had "slow" sensation (Tr. 7). On January 12, 1931, Dr. Combre found nothing wrong with plaintiff's feelings of sensation (Tr. 7, 10). Dr. Tuten found loss of sensation as early as 'November, 1930,' (Tr. 32).

"Dr. Tuten, plaintiff's witness, must be in error as to the date of plaintiff's loss of sensation in his left side, for Drs. Watkins and White were positive plaintiff had no loss of sensation before March 1, or March 26, 1931, and Dr. Combre found no such loss on January 12, 1931, long after Dr. Tuten found that trouble. Dr. Hayes found a slow sensation on April 2, 1931. Drs. White and Watkins were more specific in their testimony on this point, recalling reasons why they remembered the point, and I must accept their recollection as to the date plaintiff's trouble began.

"Dr. Tuten said that paresthesia resulting in a syphilitic patient from trauma would develop in ten days from the injury, but sometimes as late as two or three months (Tr. 30).

"It was the opinion of Dr. Watkins that paresthesia showing up in plaintiff after two months from the injury would be the result wholly of disease (Tr. 36). Dr. Holcombe said 'the rank and file of such cases' develop before six weeks (Tr. 39), and Dr. White said they would develop in two or three weeks (Tr. 41).

"According to Dr. White and Dr. Watkins, plaintiff's trouble did not develop until about seven months from the accident, and according to Dr. Combre's examination on January 12, 1931, certainly not before four months from the accident, and no witness would say that paresthesia would develop as late as four to seven months from an accident.

"Where a plaintiff suffers from syphilis which has reached the stage that commonly results in paresthesia, and has suffered traumatic injury producing hernia, paresthesia which developed subsequent to the injury, but months after the experts said it would have developed, had it been caused by the trauma, it must be held that expert opinion to the effect that the injury did not contribute to the paresthesia, outweighs any inference that might be drawn from the facts that plaintiff did have an injury, and months thereafter suffered the loss of sensation in his left side. Plaintiff has been unable to establish his case."

After a most careful reading of this record, we have not been able to find where the lower court has fallen into any error in its reference to the facts of the case and in its analysis of the evidence. A review of the testimony is therefore unnecessary.

There is no doubt that plaintiff, when the accident occurred, was suffering with a dormant syphilitic disease. The preponderance of the expert medical evidence shows clearly that the trouble of which he complains was attributable solely to his pre-existing syphilitic condition which had not been activated or accelerated by the injury he received while in the service of defendant company. In the absence of such proof showing that the injury caused the disease to become active or virulent, superinducing his physical disability, it is well settled that plaintiff cannot recover. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862, and other authorities therein cited.

Counsel for plaintiff refers with confidence to the case of Hammons v. Southern Carbon Co., 5 La. App. 187. In that case, as we understand the opinion, there was conflict in the opinion of the experts. The court, in commenting on that feature of the case, remarked that the experts, who had expressed the opinion that the disability was not attributable to the accident, had failed to state the reasons for their conclusions. It is altogether different in the instant case, as it appears here that most all of the experts expressed the opinion that the disability was not to be ascribed to the accident, gave their reasons

for their conclusion, and, more than that, traced the case of plaintiff's condition to his pre-existing syphilitic trouble.

With such expert evidence, we must conclude, as was concluded below, that plaintiff has failed to establish his case, and his demand was therefore correctly rejected.

We have also given due consideration to the alternative demand of counsel for plaintiff to have this case remanded. There is no legal ground shown to support such a demand, which is also denied.