## GOINS v. MOORE.
### No. 1051.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1932.

L. P. Bryant, of Jeanerette, for plaintiff.

Porteus R. Burke and Jacob S. Landry, both of New Iberia, for defendant.

MOUTON, J.

May 21, 1930, plaintiff, on his way from Texas to Florida, was riding in an auto driven by his cousin, J. A. Goins, was going eastward towards the town of Baldwin; while defendant, who was driving behind him in an auto in the same direction, hooked the right rear fender of his car, to the left front fender of the plaintiff's car, dragging it some distance, where it turned over, pinning plaintiff under the auto in which he was riding. The collision occurred about 9 in the morning on a straight road, where there were no obstructions or obstacles to interfere with the vision of the defendant and no car coming towards him in the opposite direction, and none behind.

It is shown that J. A. Goins was driving on his right-hand side of the road as it was legally required of him.

The record shows that Goins' car was hooked at some forty or fifty feet from a concrete bridge where it was dragged by the defendant's car, was bumped against the culvert, and turned over, while defendant's car continued on its way some distance ahead where it stopped.

Moore, defendant, was riding in his auto with a young lady who was to become his bride in the evening of the day the accident occurred. Defendant never perceived, or, if he did, very slightly, when the fenders of the cars were hooked, was not aware that he had dragged the other car to the bridge, and noticed for the first time that there was something in his rear when he heard the noise the car made when it struck the culvert and was overturned. After stopping he turned around and saw that the plaintiff's car had capsized.

Plaintiff, Lorenzo Goins, says defendant came up to his overturned car and said, "Oh, Lord what have I done?"

J. A. Goins, driver of plaintiff's car, now in Florida, who was examined under commission, testifies that when defendant came to his car he said that he was on my side of the road and ought not have run so close to me.

Defendant, who said, as we have heretofore stated, that he had barely noticed the hooking of the cars and had not perceived that he had dragged the other car, does not seem, from his testimony, to have remembered what he told plaintiff and J. A. Goins in his conversation with them about the accident.

It is therefore not unreasonable to say that defendant expressed himself in reference to the collision as was testified to by plaintiff and J. A. Goins. It is hard to conceive how defendant could, in a situation as above described, have hooked the fender of plaintiff's car without perceiving it, and dragged it over a culvert a distance of fifty or sixty feet without noticing anything in his rear, unless at the time he was in dreamland, entirely oblivious of his surroundings, was not looking ahead, lost control of his car, abruptly cut ahead of the other car, or in some other way was careless, negligent, or reckless in the management of his auto. His exclamation, according to plaintiff and his statements to Goins, confirm us in the conviction that the collision was due to the fault and negligence of defendant, as was found below.

The vital issues presented for decision in this case are in reference to the nature of the injury received by plaintiff and the amount of damages he is entitled to recover.

The district judge rendered judgment in favor of plaintiff for $750, $500 for his injuries; and $250 for his sufferings.

Both plaintiff and defendant have appealed; plaintiff is asking for an increase, and defendant for a total rejection, of the demand.

Plaintiff was injured in his left knee, was taken to Jeanerette, a town near by, where he received attention from Dr. Boykin, who advised him to go to the Charity Hospital in New Orleans for treatment, and where he remained several days.

The record of the hospital states that he had had an old injury to his knee with recent trauma; a contusion of his left knee; ankylosis.

It was shown that a little over a year before, he had suffered an injury to the same knee for which he had been treated in Texas where he was then working.

It is contended by defendant that the accident to plaintiff, in May, 1930, brought about a mere recrudescence of the trouble which had resulted from the injury to his knee which had occurred a year before.

He was hurt the first time while working in a sawmill. His leg was caught between two logs from which resulted an injury to his left knee. The accident occurred in February and he got off his crutches in May following. Soon thereafter he resumed his work in the sawmill, where he was employed in loading trucks of lumber and pushed them from the dry shed to the plane mill, and was actually engaged in that work for about six weeks when the mill was shut down and for that reason he stopped working. Thereafter, he worked on a farm, plowed, planted, and rendered the usual services of a farm laborer, and experienced no sufferings, he says, from the work he had performed as a sawmill hand and farm laborer. The fact is that when he was injured he was on his way to Florida, where he expected to get work as a farm hand. Hence it is quite evident that plaintiff had recovered from his first injury and was not suffering from any impediment that kept him from following the usual occupations of a common laborer.

When plaintiff was injured in Texas, in 1929, he was attended to by Dr. Dameron, chief surgeon at the Kirby Hospital, Silsbee, Tex.

The injury was to his left kneejoint, this physician testifies. He made, he says, a successful operation; that after the operation, plaintiff could put his foot down both heel and toe and could use his leg nicely. The testimony of Dr. Dameron, indicating that plaintiff had obtained from the operation a complete restoration of the use of his leg and knee, supports plaintiff's testimony in reference to his subsequent employment as a sawmill and farm laborer.

Dr. Dameron says, when he operated on plaintiff in 1929, he did not have "ankylosis," which means, as explained by the physicians, a fixation or stiffening of the joint.

On cross-examination Dr. Dameron was asked if he had taken an X-ray picture of plaintiff's left knee and when. His answer is that he took one in January, 1931, which was therefore after plaintiff had suffered his second injury to that knee. This picture disclosed, as testified to by Dameron, that plaintiff was then suffering with an extensive fracture of the femur and with fibrous ankylosis.

Asked if the picture disclosed by the X-ray did not establish the fact that the injury received by plaintiff in 1929 was not the proximate cause of his trouble, Dr. Dameron's answer to that question is, "No."

■ It therefore appears from the testimony that the trouble with which plaintiff was suffering after his second injury was not a mere recrudescence of his original injury, as is contended for by counsel for defendant. If the recent trauma to plaintiff's knee did not cause a fresh injury, independent of the former, it certainly resulted in an accentuation or aggravation of the original injury entitling plaintiff to damages under the well-established doctrine of our courts on this question. Behan v. John B. Honor, 143 La. 348, 78 So. 589, L. R. A. 1918F, 862; Donahoe v. Sharfenstein & Son, 154 La. 815, 98 So. 256.

■ Plaintiff testifies that he has been unable to do any work since his last injury; that he had been using crutches since that time, has suffered and was still suffering, could not stand up for any length of time without his crutches, and could not walk one mile with them before being completely exhausted or "played out," as he expressed it, and at the same time suffering intense pains.

In reference to plaintiff's condition, Dr. Dameron said that he is permanently disabled so far as his left leg is concerned; and Dr. Durest, who examined him the day before the trial, says that he was suffering with complete ankylosis of the kneejoint without flexibility, that his injury was permanent and a handicap to him as a laborer.

The proof is that plaintiff is not an educated man, cannot do clerical work or such like, and is fit by training for the ordinary occupation and rough heavy work of the common laborer.

He is now 23 or 24 and has therefore a life expectancy of many years. He has no doubt suffered considerably, was still suffering at the time of the trial, and will be hampered in his work by the effects of the injury he has received.

We find that the amount allowed below is inadequate and that plaintiff is entitled to the sum of $2,000 for his injury, and of $500 for pains and suffering, and the judgment will be accordingly amended.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing it from $500 for injury to the sum of $2,000, for pains and sufferings, that it be increased from $250 to the sum of $500, aggregating a total of $2,500, with legal interest thereon from judicial demand; and as thus amended the judgment be affirmed.