Practically the same text is found in 12 Cyc. 429–431.

 The question then is whether the statement made by the wounded man, who subsequently died, was part of the res gestæ.

"Res gestæ are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events." Code of Criminal Procedure, art. 447.

"To constitute res gestæ the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction." Code of Criminal Procedure, art. 448.

The alleged statement was made by the wounded man approximately 15 minutes after the shooting at a place in the road some 200 yards from the scene. He was then lying down with his head in another man's lap. Luther Brown testified that while he was present he heard the wounded man say, "I shot Charley Chandler (a brother of the accused) twice through the stomach and shot myself."

Jesse Pardue, another witness, said he heard him say, "I shot myself."

Mrs. Myrtle Pardue was asked if she heard him say anything, and she replied, "It has been so long ago, I have forgotten." When the question was repeated, she answered, "He said, 'I shot myself', something like that."

Whether this was an isolated statement or exclamation, or whether it was made while narrating the event, is not made certain. Luther Brown's version of what he said indicates that he was narrating the events. He probably was. At any rate there is nothing in the recitals of the bill or the testimony to indicate that what he said was "under the immediate pressure of the occurrence," or that they were "impulsive and spontaneous words." It is certain that what he said as relates to the act of shooting did not "form in conjunction with it one continuous transaction."

It is impossible to determine just how long after the shooting it was before the statement was made. The only witness who estimated the time said, "It must have been fifteen minutes, I guess."

The shooting took place in a rural section of the parish. Mrs. Pardue, who heard the statement, did not pretend to estimate the time. But she said that Luther Brown was present when she reached the place where the statement was made. Jesse Pardue, the other witness, was not asked to state the time.

It seems that Dr. Miller was present attending the patient when the statement was made. He was not called as a witness. Just where he lives, how far from the scene, or how long it took to get him is not disclosed.

Under the facts and circumstances disclosed by the record, we do not think the statement was part of the res gestæ and must therefore hold that it was properly excluded.

Bill No. 8 was reserved to the refusal of the trial judge to permit counsel for defendant to offer in evidence a subpœna issued for a witness by the state; the witness being present but not called.

Counsel practically concedes that there is no merit in this bill, and it is not pressed.

For the reasons assigned, the verdict and sentence are affirmed.

O'NIELL, C. J., dissents from the rulings on bills 2 and 3, and 5 to 7, inclusive.

### JONES v. BARTHOLOMEW et al.
#### No. 14437.

Court of Appeal of Louisiana. Orleans.
Oct. 30, 1933.

Feitel & Feitel and John E. Parker, all of New Orleans, for appellant.

Edward Rightor and E. Howard M'Caleb, Jr., both of New Orleans, for appellees.

WESTERFIELD, Judge.

Robert Jones, an employee of Joseph Bartholomew, was injured in the course of his employment by falling from a wagon owned by Bartholomew, on July 27, 1931. He died on January 4, 1932, about five months later. His widow brings this suit under the Compensation Law (Act No. 20 of 1914, as amended) claiming 400 weeks' compensation at the rate of $9.75 per week.

Defendant admitted the injury of Jones on July 27th, and admitted that he had been paid 6 weeks' compensation, but denied that his death was in any way due to the accident.

There was judgment in the lower court in favor of defendant dismissing plaintiff's suit, and she has appealed.

The only issue in the case is the question of whether the death of Jones had any causal relation to the accident which he sustained. Jones died of lobar pneumonia. He was treated by Dr. Geismar, the physician for the insurance carrier of defendant, which corporation has been joined in this suit. Dr. Geismar states very emphatically that in his opinion the fall had nothing to with Jones' death. He describes his injuries resulting from the fall as a lacerated wound of the forehead which required three sutures, a lacerated wound of the index finger of the left hand, and a contusion of the neck. These injuries, the doctor testified, healed in due course; Jones' recovery being uneventful. Dr. Geismar found him suffering from certain senile afflictions involving his heart and arteries.

Dr. Gessner testified that he examined Jones on the 7th of October, 1931, at his home. At that time he says that he had completely recovered from the effects of the accident. He found that his "heart sounds were distant" which he explains indicates a weakness of the action of the heart, and, while he found no definite symptoms of disease, he considered him a feeble "broken old man."

Dr. Taylor, who treated Jones in his last illness as his private physician and issued his death certificate, declared that his last illness and death could not have been caused by the accident.

Dr. Ficklen examined Jones on October 13, 1931, at the request of the Employers' Liability Assurance Corporation of London, England, defendant's insurance carrier. He found that his "arteries were markedly hardened; his heart was enlarged downward and to the left, and the heart sounds were faint, showing the heart muscle was not in its normal condition. The chest wall was thin and the heart sounds should have been plainly audible. They were muffled and faint." Dr. Ficklen was of opinion that Jones was in a "serious condition from disturbances which are purely medical and which are the diseases of senility or old age, and I didn't see at that time any connection between trauma and his condition." Dr. Ficklen, when asked whether the heart trouble with which he found Jones afflicted could have been aggravated by the injuries which he sustained from the fall, expressed the opinion that "heart trouble and hardened arteries are not accelerated or aggravated by injury."

Plaintiff relies upon the evidence of several lay witnesses to the effect that the physical condition of Jones was apparently normal before the accident and his health thereafter abnormal and progressively worse until his death. This testimony, it is claimed, brings the case within the authority of Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862; Donahoe v. Scharfenstein & Son, 154 La. 815, 98 So. 256, and Hammons v. Southern Carbon Co., 5 La. App. 189. The cited cases are authority for the proposition that, where a workman apparently in good health is injured in the course of his employment causing disability which continued up to the time of his death, a prima facie case is made out, and also for the proposition that, where there is some latent systemic disease aroused to activity by traumatic injury, the employer is liable for the resulting disability or death.

In the case at bar, however, the medical testimony is unanimous, and to the effect that the injury had no connection with the death of Jones, a 68 year old negro who was said to be suffering from certain diseases usually associated with advanced age and who finally succumbed to lobar pneumonia. There is no suggestion on the part of any of the doctors who testified in the case that there was or could be any connection between the results of the accident and the death of Jones which occurred some five months later. Upon the record before us, it is impossible to hold that Jones' death was due to the accident.

Counsel for plaintiff contends that in any event compensation should be allowed for the five months' period which intervened between the accident and Jones' death, and certainly up to September 25, 1931, the date on which Dr. Geismar discharged the deceased. No compensation can be allowed for the five months because it would involve a holding to the effect that Jones up to the time of his death was suffering from the results of the accident, which we hold was not the case, but upon examination of Dr. Geismar's testimony it does appear that the defendant was discharged on September 25th, as claimed, and that 8 weeks' instead of 6 weeks' compensation should have been paid.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the plaintiff, Esther

Jones, and against the defendants, Joseph Bartholomew and Employers' Liability Assurance Corporation of London, England, in the sum of $9.75 a week for 2 weeks together with 5 per cent. interest from September 25, 1931, until paid.

Judgment reversed.