AYRES, Judge.
This action was heretofore before this court (126 So.2d 445) and before the Supreme Court (La., 132 So.2d 51). In the trial court, plaintiff was awarded compensation as for total and permanent disability. This court, however, sustained a defense that plaintiff’s injuries resulted from misconduct evidencing a willful intent to injure another. The Supreme Court, after the issuance of a writ of cer-tiorari, reversed the holding of this court and remanded the case for a determination of the question of the nature and extent of plaintiff’s injuries.
The injuries sustained by plaintiff resulted from an altercation with a fellow *571 employee, details of which have been related in the opinions heretofore referred to. It suffices, at this time, to say that plaintiff’s fellow employee, with his fists, struck plaintiff in the face, knocking him to the floor of the basement of the hotel where he was employed. In the fall, plaintiff’s head struck a metal locker and the floor with considerable force. Pertinent is the observation made by this court in its original opinion:
“As a result of the blow, Velotta was rendered unconscious for a period of several minutes and then taken to the hospital where he came under the treatment of Dr. James H. Eddy, Jr. A medical examination revealed a scalp laceration, a moderate cerebral concussion or contusion, and a simple linear fracture of the skull. Dr. Eddy reported that when first admitted to the hospital Velotta was irrational, antagonistic and hard to control, but he appeared to improve and after three days he was removed to his sister’s home. About a week later he was re-admitted to the hospital where he remained an additional two weeks. * * * ” [126 So.2d 446.]
Members of Velotta’s family testified that following his release from the hospital he had never attained complete recovery; that he experienced an inability to arrange his thoughts in an orderly fashion, and that he suffered from lapses of memory and diminution in his balance.
There was some conflict in the medical testimony as to whether the accident had caused a brain injury. This question was resolved by the trial court in favor of plaintiff. The treating physician and surgeon, Dr. James H. Eddy, Jr., on first seeing plaintiff following the accident, in the emergency room of the Schumpert Sanitarium, found plaintiff had a laceration of the scalp, and a cranial cerebral injury diagnosed as a cerebral concussion or cerebral contusion. X-rays revealed evidence of a fracture of the skull. The cerebral damage thus sustained accounted, in the doctor’s opinion, far plaintiff’s irrational behavior, disorientation, and personality changes. Nevertheless, Dr. • Eddy expressed doubt that plaintiff’s mental deficiency was related to the accident.
Dr. Heinz K. Faludi, a neurosurgeon who later examined plaintiff, without the benefit of information as to the occurrence of an accident, first concluded plaintiff had fallen because of a minor stroke. His findings, in his opinion, justified a diagnosis of a mild cerebral thrombosis on the right side, producing a weakness and a sensory disturbance inducing a sense of confusion and forgetfulness in the mind, a condition unlikely of improvement and characterized, in all probability, as permanent. This condition was probably brought about, in the doctor’s opinion, by cerebral thrombosis caused by the closing of an artery on the surface of or inside the brain. On learning of the accident, the doctor expressed the opinion that plaintiff’s injuries were sustained in such accident.
The record establishes that plaintiff had performed the duties of his employment in a satisfactory manner for at least eight years prior to the accident. The record, made up of both lay and expert testimony, also leaves little cause for doubt that plaintiff is or has been, since the accident, totally incapacitated to perform his duties.
Although there were expressions of opinion by some of the medical experts that plaintiff was either physically or mentally unable to perform the duties of his employment prior to the accident, these opinions, in view of plaintiff’s aforesaid work record, are lacking in persuasive force.
Moreover, the principle is well established that the employer must take the worker as he finds him. To take into consideration the health deficiencies of an employee would at once destroy the beneficent purpose of the workmen’s compensation statute. Thus, a worker who is abnormally susceptible to disability from an accident is *572 entitled to the full protection of the compensation statute, even though the same accident would have caused little or no' harm to a healthy worker. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862; Lyons v. Swift & Company, La.App.2d Cir., 1956, 86 So.2d 613 (writs denied); Custer v. Higgins Industries, La.App.Orleans, 1946, 24 So.2d 511; Causey v. Kansas City Bridge Co., La.App. 1st Cir., 1939, 191 So. 730; Womack v. New Orleans Public Service Inc., 5 La. App. 71; Malone’s Louisiana Workmen’s Compensation Law and Practice, § 232.
We now, therefore, for the reasons assigned, find no error in the judgment appealed and, accordingly, it is now affirmed at defendant-appellant’s cost.
Affirmed.