| iSAUNDERS, Judge,
dissenting.
In my opinion, the majority errs in (1) reversing the hearing officer’s award of attorney’s fees notwithstanding defendants’ conceded failure to timely comply with dis-eovery, and in (2) affirming the hearing officer’s conclusion that claimant did not establish that her disability was job-related.
I dissent from both of these conclusions for the following reasons.

Merits

As to the merits of the claim, I find it unfortunate that the majority would discount the findings of claimant’s treating brain surgeon who actually entered plaintiffs cranium, in favor of three “experts” conceded by the insurer to be pre-screened for their friendly conclusions and by another who, all italics aside, faded to consider the likelihood that the employee’s job-related accident, in combination with her intimate relations, led to her ruptured aneurysm.
|2Only one physician held decedent’s brain in his hand and had the ability to witness her circumstances firsthand.
A finding of disability vel non is a legal rather than medical finding, DeGruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1 Cir.), writ denied, 530 So.2d 568 (La.1988); and the law is that a pre-existing disease, infirmity or proclivity does not disqualify an employee’s claim if the work injury aggravated, accelerated, or combined with the pre-existing condition to produce death or disability. Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985).
An employee’s work accident is presumed to have caused his disability when the employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared, and there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and disabling condition. Walton v. Normandy Village Homes Ass’n., Inc.
The insured cannot overcome this presumption merely by refusing to inform itself of claimant’s pre-accident history. To the contrary, sanctions are warranted where the insurer gathers incomplete data in preparing the claim or makes no effort to correct an error that is pointed out to it. Stegall v. J & J Exterminating, Et Al., 94-1279 (La.App. 3 *784 Cir. 3/1/95), 651 So.2d 400, citing Barton v. Wausau Insurance Co., 545 So.2d 1248 (La.App. 2 Cir.1989).
The presumption is not irrebuttable, but its effect is to shift the burden of proof to the defendants. Haughton v. Fireman’s Fund, 355 So.2d 927, 929 (La.1978).
Here, the majority affirms the hearing officer’s conclusion that claimant’s ruptured aneurysm was caused solely by her intimate relations. In my view, the majority’s approach fails to take into account the likelihood that the employee’s | ajob-related accident, in combination with her intimate relations, led to the ruptured aneurysm.
The full consequences of a disabling accident are not always apparent when the injury occurs. See Robichaux v. Realty Operators, 195 La. 70, 196 So. 23 (1940). Thus, an employee who finishes a day’s work without reporting an accident is not barred from recovering compensation.
Nelson v. Roadway Exp., Inc., 588 So.2d 350, 353 (La.1991).
Here, the facts are clear. There would appear to be no question that claimant both had an aneurysm before her workplace accident, and had customary intimate relations prior thereto, without becoming disabled until after bumping her head on the job, the only variable in this scenario (apart from her acknowledged disability).
Claimant’s is no novel situation, and one which I believe is compensable. In Nelson, even claimant indicated that he “got hurt in bed,” and still the supreme court reversed the trial and appellate court’s conclusion that the worker’s disability was not employment related, because prior to his disabling workplace accident, “Nelson did not have a major disc rupture but a low grade disc bulge, which gradually deteriorated and inflicted pressure on the nerve root, exacerbating the injury.” Nelson, 588 So.2d at 352. Nelson’s testimony, confirmed by co-employees, was that he arrived in good physical condition on his last day of work but left in pain that evening. Significantly, Nelson was given benefits even though he did not report his accident or obtain medical treatment until the next day.
This case also strikes great resemblance to Hammond v. Fidelity and Cas. Co. of New York, 419 So.2d 829 (La.1982):
As the facts related above illustrate, the plaintiff did not suffer from any apparent disabilities or abnormalities in his upper left arm until he experienced the mechanical trauma to that portion of his left arm. Almost immediately after the trauma the plaintiff began experiencing the symptoms of swelling and pain in the same region of his upper left arm where he had sustained the mechanical trauma. Although the symptom of swelling subsided within the first week, it 14did not totally disappear and it continuously manifested itself until the swollen mass was removed by the wide excision. The plaintiff continues to suffer from an aching pain in this area. Additionally, the evidence, both medical and nonmedical, shows that there is a reasonable possibility of causal connection. Specifically, Dr. Gore, the oncologist, in a letter and in his testimony indicated that there was a possibility that the trauma caused the tumor to hemorrhage internally resulting in a manifestation of the tumor not previously experienced. He felt that the tumor was preexisting, but was sub-clinical (not perceivable by a layman or a doctor upon physical examination) prior to the trauma. The fact that a condition is preexisting does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee’s disability is compensable if a preexisting disease or condition is activated or precipitated into disabling manifestations as a result of a work accident. Allor v. Belden Corp., [393 So.2d 1233 (La.1981),] 1236; Johnson v. The Travelers Insurance Co., 284 So.2d 888, 891 (La.1973); Behan v. John B. Honor Co., 143 La. 348, 351, 78 So. 589, 590 (1917). The sequence of events and Dr. Gore’s letter and testimony establish a reasonable possibility of causal connection between the accident and the disabling condition.
*785 Hammond, at 831-32. It is immaterial that the disability could have been brought on by causes other than a work-related trauma, if, in fact, trauma on the job which meets the standard of accidental injury is a disabling factor. Id., citing Parks v. Insurance Company of North America, 340 So.2d 276, 281 (La.1976).
In Hammond, claimant had a tumor which undoubtedly pre-existed his workplace accident, but was nonetheless deemed compensa-ble by the supreme court because it did not become disabling until after the trauma received at the workplace.
As to the merits, in the end the question becomes whether defendants in this case have shown that an intervening cause (claimant’s intimate relations) is responsible for the disabling ruptured aneurysm. Because claimant had both an aneurysm and intimate relations before the workplace accident, but no disability until the aneurysm ruptured afterwards, it is clear that the only variable factor of causation in this case is the workplace accident, regardless of whether it alone or Isin concert with her intimate relations account for her disability. See Walton, 475 So.2d at 324-25.
The fact that a person already afflicted with a dormant disease that might some day produce physical disability is no reason why she should not be allowed compensation for a personal injury that causes the disease to become active and superinduces physical disability; to say that claimant might, and perhaps would, at sometime, have become disabled by the disease lurking in her system even if the accident complained of had not happened, is not much more of a defense than to say that every man must some day come to the end of his worldly career, accident or no accident. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (1917).

Attorney Fees

Second and independently, the majority errs in reversing claimant’s attorney’s fees, although the fees had been awarded not because of the employer’s failure to pay benefits (La.R.S. 23:1201.2), but because of its arbitrary, capricious and unreasonable behavior in failing to comply with discovery (La.R.S. 23:1125).
Initially, the majority contends that the claimant must prevail in the workers’ compensation case in order to be eligible for La.R.S. 23:1125 attorney’s fees. I disagree, as attorney fees awarded by law for failing to pay claims timely arise separately, by La. R.S. 23:1201.2.
As I read the workers’ compensation act, taken as a whole, it seems clear to me that the arbitrary and unreasonable failure to make discovery in a case that is a bona fide, although unsuccessful, claim for workers’ compensation is completely at odds with La. R.S. 23:1125, which reads “[wjhenever an employee, whether injured or not....” I disagree with the majority’s suggestion that to receive attorney’s fees a Motion to Compel is required. Indeed, from my perspective, the majority’s holding today runs counter to this circuit’s position on the issue in Fusilier v. Slick Const. Co., 94-11 (La.App. 3 Cir. 6/1/94); 640 So.2d 788. (Claim fails; attorney’s fees nonetheless awarded independently for employer’s failure to timely produce medical report.)
Consequently, in my view, regardless of the merits of claimant’s case, the question of whether attorney’s fees are due for defendant’s failure to timely produce the medical reports is separate and independent from claimant’s ultimate success on the merits. Usually, the answer to this question will fall on the facts: did defendant comply with the timely restraints La.R.S. 23:1125 requires of them. In concluding that they did in this ease, the majority focuses exclusively on Dr. Adams’ reports, which were produced timely. However, in doing so, the majority ignores defendant’s stipulation that other medical records were not timely produced.
In my view, this judicial confession alone warrants imposition of attorney’s fees under La.R.S. 23:1125 as a matter of law. See La.Civ.Code art. 1853 (judicial confession made by party in judicial proceeding constitutes full proof and may be revoked only on ground of error of fact) and La.Code Civ.P. art. 2085 (an appeal cannot be taken by parties confessing judgment). Thus, in my opinion, the majority’s review errs on the *786 issue of penal relief no matter the outcome on the issue of causation, as La.R.S. 23:1125, designed to retard parties from unilaterally retarding the judicial process, arises independently of the conclusion on the merits.
For the foregoing reasons, I respectfully dissent. I disagree with both conclusions reached by the majority.
_[iORDER
The Application for Rehearing herein having been duly considered:
IT IS ORDERED that a Limited Rehearing be, and the same is hereby, GRANTED, limited to recognizing the effect of the dismissal of the Answer to the Appeal.