Plaintiff instituted this suit for compensation alleging that he received an injury to his back in an accident while in the employ of the defendants; that said injury has rendered him totally and permanently disabled from the performance of any labor and prayed for judgment accordingly. He prayed for service and citation on both defendants.
Personal service was made upon his immediate employer, H.D. Thomas, who was a subcontractor for defendant, Mansfield Hardwood Lumber Company of Louisiana, Inc., and service was made upon the latter by serving L. Harrell, manager of the Mansfield Hardwood Lumber Company in the parish of Winn. The *West Page 782 
suit was filed in Natchitoches Parish, Louisiana, and both defendants were domiciled in parishes other than Natchitoches.
Defendants filed pleas to the jurisdiction ratione personae. Defendant Mansfield Hardwood Lumber Company, Inc., filed an exception to the citation alleging that its domicile was in Caddo Parish, Louisiana, and that its agent and officer for service of process was located in Caddo Parish, Louisiana; that L. Harrell is and was not qualified to receive service and citation and is a resident of Winn Parish, Louisiana. Both defendants also filed exceptions of no cause and no right of action.
On October 16, 1939, the lower Court sustained the exceptions to the citation and plea to the jurisdiction with leave to plaintiff to amend in each instance. The exceptions of no cause and no right of action were overruled. On application of the plaintiff, a rehearing was granted on the exception to the citation and the plea to the jurisdiction and, on the lower court's own motion, a rehearing was granted on the exceptions of no cause and no right of action. These rehearings were granted on March 19, 1940.
The minutes of the court fail to show that the exceptions or the plea to the jurisdiction were ever retried or passed upon by the lower court. The plea to the jurisdiction was, however, cured by plaintiff when he amended his petition and alleged that the accident complained of occurred in Natchitoches Parish, Louisiana.
On April 17, 1940, defendants filed their answers without first insisting upon a decision or ruling on the exceptions. By doing so the exceptions were abandoned.
Plaintiff was employed by the defendant, Thomas, a subcontractor of defendant, Mansfield Hardwood Lumber Company, Inc., at a wage of $2 per day for a six-day week. His work consisted of loading sawlogs onto gondola cars. At the time of the alleged accident plaintiff was "hooking tongs". As we understand it, the logs were loaded by machinery, consisting of a power unit, a scaffold or tripod with pulleys. There is a cable from the power unit which runs through the pulleys. On the end of the cable two ropes are fastened and on the end of each rope there is a metal hook called a "tong". These tongs are fastened in the end of the log. The power is then applied by the power unit and the log is hoisted and swung over the car. When it has been safely landed, the tongs are disconnected from the log. To the tongs on each end of the log another rope is attached and an employee, one at each end, holds these ropes and guides the logs to their proper location on the car.
On the occasion of the alleged accident, the log was carried with too much force by the applied power and was swung over and beyond the car onto which it was to be loaded. On the side of the track where the gondola was being loaded there was a ditch three or four feet deep and five to eight feet wide. Plaintiff's work required him to be on the opposite embankment of the ditch from the car. When the log went over the car, it jerked the rope plaintiff was holding. Before plaintiff could turn the rope loose, he was jerked forward causing him to lose his balance. He did not fall but went forward down the embankment and across the ditch at a fast pace until he stopped his forward movement by bracing himself with his hands against the gondola car. It is very evident that the witnesses for defendants have attempted to minimize the occurrence and plaintiff's witnesses attempt to magnify it. However, there is no dispute about such an occurrence taking place and that it was an unusual happening, as shown by some of the witnesses for defendants, who testified that they immediately asked plaintiff if he had hurt himself. They testify that he replied "no" or "hell! no." He states that he replied, "I nearly broke my back".
The witnesses for the defense and those for plaintiff differ as to the time of the occurrence, the former placing it at approximately 3 P.M. and plaintiff and his witnesses fixing the time at approximately 5:30 P.M. Plaintiff contends he assisted in loading only a few logs after the accident and defendants contend that he assisted in loading two truck loads of logs. This difference of opinion is of little value as plaintiff does not contend he was totally disabled immediately after the accident.
We are convinced that the occurrence above related constituted an accident within the intendment of the Employers' Liability Act of Louisiana (No. 20 of 1914, as amended), and that the accident could have caused the sacro-iliac sprain complained of by plaintiff. It is common knowledge and recognized by medical men who are familiar with back *West Page 783 
injuries that such an injury could occur from a slight jerk, awkward step or unexpected twist of the body. It does not always take a severe jolt or blow to the body to cause an injury to the back.
The serious question in the case is whether or not the accident above related caused the present disability which plaintiff is suffering or was it the natural result or culmination of an arthritic condition formerly existing in that region of the back and probably caused by two admitted former injuries?
Plaintiff suffered injuries to his back in the region of the sacrum and ilium in 1937 and in 1938 and settled both claims for compensation by compromise. The injuries suffered in those two accidents were to the left side of the back and the present injury is principally to the right. All the medical men admit this fact. They likewise admit that there was an arthritic condition existing in that region of the back and that it is possible for arthritis to entirely disable plaintiff. It is clearly established that plaintiff's back was weak and due to that fact was more susceptible to traumatic injuries than a normal one would have been. Most all of the physicians admit, when asked, that an accident such as happened in this case could accelerate and make more pronounced the weak condition existing in plaintiff's back.
All of the doctors who testified for the plaintiff are confident that he is suffering from a sacro-iliac sprain on the right side of the back and some of the defendants' doctors — especially Dr. Reed, of Oxford Reed Clinic — corroborate the finding of plaintiff's doctors.
There is no question about plaintiff being disabled from performing manual labor at the time of the trial below and we are faced with these undisputed facts:
That plaintiff had been in the employ of defendants from the fall of 1938 until the date of the accident, June 14, 1939. During that time his duties were sawing logs and loading them on gondola cars. That on the morning after the accident he was unable to work and reported same to his employer and also requested to be taken to a physician. This request was not granted, but plaintiff found a way and did go on that day to a physician in Natchitoches, Louisiana. He was examined and his back strapped with adhesive tape. About two weeks later the same doctor fitted him with what he called a sacro-iliac belt, which plaintiff has worn now for many months. He has not attempted to do any work since the date of the accident.
As a rule we look with great suspicion upon a case where the plaintiff has had several injuries to the same part of his body, but in this case the former injuries appear to have been on the left side while the present injuries are to the right side.
Several days after plaintiff had visited the physician of his choice and had knowledge that his back was in bad shape, he mailed a postal card to the Mansfield Hardwood Lumber Company demanding compensation and stating that he thought he was ruptured. He made no mention of the back injury. Defendants urge this to prove that plaintiff knew he had not injured his back on June 14, 1939. However, we accept the plaintiff's explanation of this occurrence as satisfactory. He stated that he had reported the back injury to his immediate employer the morning after the accident occurred and saw no reason to report it again. That he had a burning sensation in his groin and thought he might be ruptured. He is corroborated in this respect by one of the doctors who stated that plaintiff complained to him about the burning sensation in his lower abdomen.
After all is said, the evidence is not as satisfactory as it might have been and there are numerous contradictions, but we do not feel justified, when taking it all together, in saying that the Judges of the lower court were in error in awarding plaintiff compensation for total disability.
The case was tried first by Judge Jones who awarded plaintiff compensation for a period not to exceed 300 weeks, finding him totally disabled but not permanently so. Because of an erroneous ruling regarding the medical examination of plaintiff, we remanded the case to the lower court, setting aside the judgment. When it was tried the second time, Judge O'Neal, of the First Judicial District Court, heard the case and awarded the plaintiff judgment for total and permanent disability for a period not to exceed 400 weeks. We cannot say there is manifest error in this judgment.
It therefore follows that the judgment is affirmed, with costs. *West Page 784