The prayer of plaintiff's petition is that he have judgment against the defendant company for $8,000, payable in 400 weekly installments of $20 each, beginning on January 16, 1941, plus the sum of $250 for medical expenses, on account of total and permanent disability resulting from an injury to his back which he claims to have received on the above date. There is no dispute about his employment nor as to the basis of his compensation payments. In fact, the defendant company admits paying plaintiff compensation for fifteen weeks at $20 per week on account of the alleged injury and avers that it furnished him medical services in excess of the amount required by law. The company denies that plaintiff sustained an accidental injury *Page 829 
as claimed by him, and avers that he suffers no disability. In the alternative, and in case plaintiff is found to be entitled to compensation, the company asks that it be given credit for the amount already paid.
At the trial of the case, counsel for both sides entered into a stipulation to the effect that plaintiff had been paid compensation for fifteen weeks at $20 per week and that the defendant had paid more than $250 for medical services. The only way that we can account for the omission of these important facts from plaintiff's petition is that it was an oversight on the part of plaintiff in failing to inform his attorney of these facts, or else the latter forgot to set them out in the petition.
The trial court rendered judgment in favor of plaintiff for the sum of $7,700 (being the amount sued for, less the payment of $300), payable "for a period not exceeding four hundred equal weekly installment(s) of twenty dollars ($20.00) each", and also fixing the fees of three expert witnesses. The defendant has appealed.
At the time of his alleged injury, plaintiff was assisting in building a pipe rack for the defendant company at Black Lake, six or seven miles from Hackberry, in Cameron Parish. The rack was being built out in the water on a scaffold with heavy, water-soaked timbers, weighing 300 pounds or more. In relating how the accident happened, plaintiff testified that "as I reached out to pick up a 3x10 about 20 or 25 feet long my back popped and I fell, and a stinging pain came in this back, and it never has been relieved, it is still there." He says that he got sick at his stomach, fell down between the cat-walks and hardly knew what he was doing. When he was able to get up, he told the men on the job that he couldn't go any further, and the foreman told him to go to the boiler room, a dry and warm place, and one of the men helped him to this room. He stayed there for two hours or so in severe pain, and someone gave him aspirins. A company boat came in and he was put on the boat and sent home and soon thereafter was treated by the local doctor of the company.
Counsel for defendant have attempted to show that the several accounts given by plaintiff as to how the accident happened are contradictory and for that reason cast serious doubt on the actual occurrence of an accident. They point out that in one place he says that he felt the pain in his back as he reached out to pick up the timber; then on cross examination, he says he felt the pain when he was lifting the timber; and in a written statement given a few weeks after the alleged accident, he said that he reached out to get the board to keep it from breaking, and as he caught hold of it, he felt a sharp pain in the small of his back; that he felt the pain just as he took hold of the board and before he lifted it, but it became worse as he tried to lift it.
We can find no evidence of any intention on the part of plaintiff to misrepresent his account of the manner in which the accident occurred. These apparent variations are nothing more than the slight differences usually found where a person gives several statements as to how an accident occurred — particularly in the case of an uneducated person as plaintiff seems to be. We gather from his testimony that he was lifting in the middle of this heavy and water-soaked timber while he was standing on wet ground and on top of greasy pipe, and had gotten the timber about waist high when he felt the pain and fell to the ground.
Two men who were helping lift these boards out of the water testified that, while they did not see plaintiff lifting on the board and did not see him fall, yet they heard him give an out-cry of pain, looked around and saw him in a stooped position, giving expressions of pain and stating that he had hurt his back. Another witness met plaintiff on his way to the boiler room and the latter was walking in a stooped position, pale and holding his back, and stated to the witness that he had hurt his back lifting timbers. With this uncontradicted corroborative evidence to support plaintiff's statement that he strained his back while lifting these timbers and suffered an injury to his back of some kind, we are forced to conclude, as did the trial judge, that he sustained an accident within the meaning of the compensation law.
The next and most important question to determine is whether or not this accident has any causal connection with his present disability. The evidence shows that he has not worked and has not been able to work since the alleged accident in January, 1941, and he has lost considerable weight. The evidence shows that plaintiff suffered some kind of back injury in June, 1940, and was treated by Dr. Colligan, the *Page 830 
defendant's local doctor, for sacro-iliac strain. He told this doctor that he had strained his back while handling some pipe — cat-heading, as he calls it. Dr. Frederick saw the plaintiff about five times in June and July, 1940, and concluded that the principal cause of his trouble at that time was non-specific prostatitis. The last time he saw plaintiff the latter part of July, he was improved and was advised to return to light work.
Plaintiff testified that he was fully able to do his work before the injury in January, 1941; that he had been examined once a year by the company doctor, the last examination being by Dr. Howell two or three months before the injury; that Doctor Howell had pronounced him able to work. We do not deem it necessary to discuss the objection made by defense counsel to the admissibility of the testimony of plaintiff relative to the statement made by Dr. Howell as to his physical condition at the time of this last examination, as this doctor passed plaintiff for the hard work that he was doing, and this fact in itself is just as strong proof that the doctor found him fully able to work as any statement which the doctor could have made to plaintiff or any one else. Moreover, it is shown by an abundance of evidence that plaintiff had been doing the hardest kind of work for sometime before the injury in January, 1941, which is proof in itself that he was able to work.
Learned counsel for defendant insist that plaintiff made conflicting and contradictory statements concerning the previous injury or complaint in June, 1940, and for that reason his testimony on all other points affecting his claim should not be given much weight. It is true that plaintiff denied on the witness stand that he had received a previous injury to his back, but insisted that the previous injury or strain was lower down than the presently claimed injury; that it was in his hip. He stated to the doctor who treated him for the previous complaint that he strained the lower part of his back, and in the statement that he gave the company in March, 1941, in describing this previous injury, he stated that he pulled on a rope and felt a cramp in his back, about six inches lower than where he felt the pain in the later accident.
While there does seem to be an intention on the part of plaintiff to avoid a frank admission that the previous strain affected any part of his back, yet we give him the benefit of the assumption that he considered the previous strain or injury as so much lower down in his back than the later injury that the former was not similar in location to the latter and had no relation to it. Even allowing him the benefit of this assumption, there still remains an inescapable impression that he thought his case would be prejudiced by admitting that the former strain or injury was to the lower part of his back rather than in his hip. It is unfortunate that so often an employee, otherwise perfectly frank and honest in his testimony, will get the idea that his claim for compensation will be favored by the concealment or twisting of some unimportant fact, whereas, a frank and clear-cut statement of all the facts will serve him better.
Dr. McKinney, a radiologist, made x-rays of plaintiff's back after the first complaint and after the second alleged injury. He testified that these pictures show the arch articulations facing in the antero-posterior plane instead of the transverse plane of the body, and a slight narrowing of the lumbo-sacral disc. He says that this causes a rotation of the vertebrae in the lumbar region and will continue to cause pain in plaintiff's back. He says that this abnormal condition is congenital and not due to an injury.
Regardless of the fact that plaintiff may have had a condition of prostatitis and an abnormality in his lower back, the fact remains that up to January 16, 1941, he was successfully performing the most arduous and exacting kind of manual labor; that on that date, while straining in lifting a heavy and water-soaked piece of timber, he felt a sharp and severe pain in his back, fell out and became pale and sick at his stomach; that he was immediately thereafter treated by the company doctors, Watkins and Colligan, for back strain and was paid compensation for fifteen weeks; that he has been treated continuously since the accident by Dr. Colligan who says that plaintiff is still disabled.
Dr. Digiglia examined plaintiff three or four times after the accident and found spasm of the muscles and tenseness in the lower thoracic and upper lumbar region, and from the history given him he concluded that the condition was due to an injury. He further stated that without a history, he would suggest an injury. Dr. Goldsmith examined plaintiff shortly before *Page 831 
the trial and found that he complained of pain in the lumbar spine with some tenderness. He complained of pain on slight forward flexion of the spine and stiffness on lateral flexion. From the history given him and as a result of his examination, the doctor expressed the opinion that the condition was caused by an injury. He stated that the only way to determine whether or not a person is suffering from an injury to the nerves and muscles in the lumbar region is from subjective symptoms and certain objective signs, such as spasm of the muscles in that area. Plaintiff used a cane in walking and walked in a stooping posture. This doctor was of the opinion that the condition in the soft parts of the back was secondary to some pre-existing condition; that an injury to the back could aggravate a preexisting injury or disease and make it worse.
Dr. Walter Moss, a witness called by the defendant, examined plaintiff twice after the alleged accident, and he concluded that the trouble in plaintiff's back was caused from prostatitis, and his condition was not due to an injury. However, Dr. Moss gave an answer which we think explains the connection between the preexisting prostatitis and the strain or injury suffered by the plaintiff in January, 1941. The doctor was asked if a man with the condition plaintiff had lifted a heavy object and complained of a strain and immediate pain thereafter would not such a strain or injury aggravate the condition and cause it to become more severe. The doctor answered as follows:
"If the man were lifting a heavy object and the pain occurred even as he describes the pain to me, I would say that it certainly had something to do with the pain that he suffers, accepting the fact that the pain occurred subsequent or during the strain and that the pain continued thereafter."
Counsel for defendant seriously object to an order rendered by the trial court under a rule, requiring the defendant to furnish the plaintiff with copies of the reports made by Doctors Watkins and Moss of their physical examinations of plaintiff. Both of these doctors examined plaintiff at the request of the defendant company several months before the rule was filed to require the production of these copies. Article 473 of the Code of Practice authorizes the court, on motion of one of the parties, to require the adverse party to produce in court books, papers and other documents in his possession, the order to describe such documents. If the production of such documents can be ordered on a motion made by a party to the suit, we see no reason why the same result could not be obtained under a rule instead of a motion. In any event, the defendant has not been prejudiced by the order as the compensation law gives to the employer the privilege of ascertaining the physical condition of an injured employee by periodic examinations, and as a correlative of that right owes the employee the duty of informing him of the result of these examinations. Sections 9 and 10 of Act 20 of 1914, as amended.
Conceding that the plaintiff did have a prostate trouble which produced back pains, the evidence fully supports the conclusion that the injury which he received in his back while lifting the heavy, water-soaked timber aggravated the preexisting condition and changed plaintiff from an employee doing the hardest kind of work to a man who was no longer able to do this type of work. Under these circumstances, he is entitled to compensation for total and permanent disability, and citation of authority is not necessary. This is not a case where the pain attendant upon a pre-existing disease was increased by reason of the strain incidental to plaintiff's usual and customary work.
Counsel for defendant strenuously insist that plaintiff cannot recover on the ground that his disability resulted from the aggravation of a pre-existing condition for the reason that, by his pleadings and his testimony, he has pitched his claim solely on the ground that his disability resulted from the accident; that he was previously in good health. We do not think this contention is good for the reason that, in a compensation suit, the court is not bound by the usual technical rules of procedure, and there is no inconsistency in permitting plaintiff to recover where he alleges that his disability resulted from an accident and the evidence shows that the accident aggravated a pre-existing condition. Brim v. Home Accident Ins. Co., 15 La.App. 681, 131 So. 762. It is true that plaintiff alleged in his petition and testified on the stand that he was in good physical condition previous to the accident. He certainly had a right to think he was in good condition from the fact *Page 832 
that he was performing his work day by day and was not under treatment by a doctor for any disease.
While the judgment correctly awarded plaintiff compensation for total and permanent disability, it will have to be revised and recast so as to conform to the law. As already stated, the judgment awards plaintiff a flat sum of $7,700, payable for a period not exceeding 400 weeks, whereas the law provides that for total and permanent disability the compensation shall be paid during the period of disability, not to exceed 400 weeks.
For the reasons assigned, it is ordered that the judgment appealed from be revised and amended, so as to award plaintiff compensation for total and permanent disability at the rate of $20 per week, for a period not exceeding 400 weeks, beginning January 16, 1941, with legal interest on the past due installments from their respective due dates, subject to a credit of $300 previously made in fifteen weekly installments; and, as thus revised and amended, the judgment is affirmed.