86 So.2d 613 (1956)
Elmore LYONS, Plaintiff-Appellee,
v.
SWIFT & COMPANY et al., Defendants-Appellants.
No. 8491.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1956.
Rehearing Denied April 19, 1956.
Writ of Certiorari Denied May 7, 1956.
*614 Browne, Browne & Bodenheimer, Shreveport, for appellants.
Wilson, Abramson & Maroun, Shreveport, for appellee.
AYRES, Judge.
Plaintiff has instituted this action for compensation in the sum of $30 per week as for total and permanent disability, together with the maximum statutory allowance for medical expenses, plus 12 percent penalties and a reasonable attorney's fee, against his employer, Swift & Company, and its compensation insurance carrier, Security Mutual Casualty Company.
From a judgment in plaintiff's favor against both defendants, in solido, for the amount of compensation as prayed for, together with $222 for medical expenses, defendants prosecute this appeal. Plaintiff has answered the appeal and prayed that the award be amended by increasing the medical expenses to the statutory limit and by allowing penalties and attorney's fees.
Plaintiff bases his claim for compensation upon an accident alleged to have occurred December 6, 1953, while in the employ of Swift & Company as a truck driver on a trip to deliver fertilizer to Camden, Arkansas, and on return via El Dorado for a load of ammonium nitrate. The vehicle consisted of a truck and trailer combination, the trailer having a length of 24 to 28 feet. Plaintiff sustained an injury in loading his vehicle with nitrate obtained from a railroad car. He was assisted in this loading by two fellow employees. In the performance of this task they were using a 2-wheeled hand truck, upon which seven or eight 100-pound sacks of ammonium nitrate were placed and conveyed from the car, over a runway, up an incline to the truck. Plaintiff was operating the truck, and, on proceeding up the runway, his feet began to slip because of fertilizer spilled thereon and the truck threw him *615 back, jamming him against the car, one of the truck handles striking him in the abdomen.
Plaintiff made an immediate report to his fellow employees that he had been injured, although, apparently, from the positions in which they were working, they did not see the accident. Plaintiff was unable to continue with his work and obtained the services of others to complete the load. However, he drove the truck back to Shreveport, arriving about 11:00 o'clock P.M. His fellow employees corroborated his testimony as to the report made to them of his injuries.
On the morning following his injury plaintiff reported to his superior, defendant's superintendent, and informed him that he was injured the day before at El Dorado by the hand truck getting overbalanced. The superintendent denies that the report was made but indicates that plaintiff complained of being sick, whereupon he was sent to the Company physician, Dr. J. R. Brown, who says that plaintiff came to him on December 8, 1953, complaining of indigestion after eating, as well as vomiting, and with no appetite, gas on his stomach and the loss of 20 pounds weight in two months. The doctor omits from his record any statement made by plaintiff that he sustained an accident. He denies plaintiff gave him that information. From the symptoms suggested by plaintiff's complaints, the doctor was evidently apprehensive that plaintiff was suffering from a stomach cancer, or carcinoma, which is defined as a common malignant epithelial cell tumor, which is most frequent in certain organs of the body, including the stomach. The doctor examined plaintiff and began a series of tests, for the completion of which plaintiff was referred to the Confederate Memorial Hospital, due to his financial condition. The tests consumed some weeks and plaintiff was admitted to the hospital, where he was operated upon February 1, 1954. A major portion of his stomach was removed.
It is plaintiff's contention that as a result of the aforesaid accident he sustained severe and serious injuries to his intestines, stomach and the lymph nodes; that prior to the accident he had been suffering with a stomach condition, the nature of which was unknown to him, but which was probably a carcinoma; that the accident aggravated the condition to such an extent as to render him totally and permanently disabled. Following the operation and his recuperation therefrom, plaintiff was given employment for several weeks as a night watchman, but his services were eventually discontinued. Plaintiff's employment with the defendant began in 1947 as a truck driver, the duties of which required the driving of a truck with a trailer 24 to 28 feet in length attached thereto, with a load capacity from 10 to 15 tons, and the loading and unloading therefrom of loads of merchandise, particularly fertilizers. Prior to December 6, 1953, plaintiff was apparently in robust health and good physical condition.
Defendants denied the occurrence of the accident but admitted that prior to the alleged date thereof plaintiff was suffering with a carcinoma of the stomach, which they contend was neither activated nor aggravated by the trauma.
That plaintiff is, and has been since December 6, 1953, permanently and totally incapacitated from the performance of the duties of his usual occupation of driving a truck, loading and unloading merchandise therefrom, or from the performance of labor of a similar character, has been established beyond all serious doubt. The fact of the occurrence of the accident as alleged and contended by plaintiff has likewise been sufficiently established.
Neither in his petition, nor on trial, nor before us did plaintiff claim that the injury caused or produced the cancer. His position is that this body infirmity was activated, aggravated and accelerated to its inevitable disabling effect by the accident The issue is thus presented for determination. We are, therefore, relieved from a discussion or consideration of considerable of the testimony of the experts, particularly those portions dealing with controversial *616 questions in the medical profession as to whether or not trauma, constantly applied over a long period of time, or a single act of trauma, may produce or superinduce a cancer. In passing, however, it may be stated that the consensus of the experts is that a constant application of trauma, such as in irritation, rubbing or of a more severe or serious nature, may produce cancer. A diversity of opinion exists as to whether a single act of trauma may produce such effect.
Four expert witnesses testified in this case, one, Dr. G. H. Cassity, for the plaintiff, and Drs. J. R. Brown, U. H. Stoer and Thomas R. Simpson for the defendants. All, except Dr. Stoer, are engaged in a general practice of medicine and surgery. Dr. Stoer, who received his degree in 1943, is a pathologist at Schumpert Sanitarium.
Dr. Cassity received his degree as Doctor of Medicine in 1903 and had 52 years' practice, 45 of which were in Shreveport, on the date this case was tried. Drs. Brown and Simpson received their degrees in 1926 and 1931, respectively.
Dr. Cassity, who examined plaintiff before testifying at the trial, in answer to hypothetical questions based upon the facts and history of plaintiff's employment, accident and physical condition, stated there was very likely a relationship between the injury and the cancer, which, in his opinion, existed in a dormant stage and was very likely activated or aggravated by the blow to the stomach. It was his opinion that the cancer may have been encapsulated or surrounded by a membrane, which the blow could have disrupted, producing a metastasis, or a moving of the cancer cells from one place in the body to another. This change or removal, it was explained, might be through the lymphatic system or in the blood stream, which was explained as meaning that cells from the original cancer may be carried either by the lymphatic cells or the blood stream to other parts of the body, even to those parts some distance from the site of the original cancer. He explained that trauma could possibly bruise or crack up the cancer, causing it to break up, or would so injure it that some cells would become detached and be picked up by the lymphatic system or the blood stream. He was asked "Is there any doubt in your mind but that that blow such as I have described to you, could render an existing cancer or cause it to break up so as to cause that condition?", to which he replied: "Not much doubt; I have seen quite a number of those cases in which I thought the injuries caused the cancer to emigrate, but I have seen a case or two where I have thought the injury caused the cancer." The doctor is one of those in the profession who has the opinion that trauma may cause a cancer. It was explained that, in his opinion, the trauma received by plaintiff was the thing that produced the pain and plaintiff's immediate incapacity to continue with his work on the day of the accident. The doctor expressed agreement with statements of eminent authorities on cancer to the effect that trauma is accepted as a cause of aggravating a cancer, one of whom referred to was Dr. Boyd, Professor of Pathology at the University of Toronto, who was an author of a treatise on surgical pathology, wherein it was stated:
"Trauma frequently reveals and aggravates a tumor, but that is very different from causing it. Whenever an apparently trivial injury is said to have produced some peculiar and exaggerated effect, and a tumor is later discovered, it should raise the suspicion that the tumor antedated the injury."
This witness was in agreement with two other recognized authorities, Dr. Moritz and Dr. James Ewing, that a mechanical injury may cause a tumor to form in an individual, who, for other reasons, is predisposed to the condition, the tumor or tissue in such a person being less able to withstand the mechanical stress than normal tissue in a normal person not so predisposed to that disease. A summary of the testimony of this witness as to plaintiff's case was briefly stated:

*617 "Q. Then, doctor, is it fair to say that the sum total of your testimony is that this man was suffering with carcinoma of the stomach, which we know was not disabling at that particular time, but that this blow accelerated and aggravated the condition to the point where he was totally disabled and necessitated this operation? A. I would say that, yes, sir.
"Q. You consider that after that day and that injury he became totally incapacitated and was rendered useless for any labor whatever? A. Yes, sir."
Drs. Brown, Stoer and Simpson were of the opinion trauma could not aggravate a cancer or accelerate its development unless the blow or trauma received is sufficient to perforate or penetrate the cancer, in which event a rupture or bleeding therefrom would result. However, such conditions would appear as almost positive symptoms of the existence of the disease and of its aggravation. It was shown, however, that bleeding from such a rupture may subside altogether, and, while prevalent on one day, may not show up at all the following day. No tests whatever were made immediately following the accident and whatever tests were made thereafter may have been too late to have revealed the condition which is claimed would have resulted from an injury to, or an aggravation of, the cancer. Dr. Cassity explained, however, that the rupture might result within the cancer itself, comparable to a blow to an exterior surface where blood would appear in the tissues but none on the surface.
The medical authorities differ as to whether trauma, or a blow, to a cancer may aggravate its condition and activate or accelerate the rapidity of its growth in destructive power and thereby hasten the incapacity and disability in a manual laborer. If a blow is received that would affect healthy, normal tissue in a robust, healthy man, and render him incapacitated for the performance of his customary duties, it appears consistent with reason that a blow to diseased tissues or organs would, at least, tend to produce the same effect. As stated heretofore, the opinions of the experts offered by defendants are not wholly in agreement on the proposition that a blow or trauma cannot or will not affect or aggravate a trauma. Their explanations are qualified with the additional requirements that, as to the location of this particular carcinoma in plaintiff's stomach, the blow, in order to have such effect, would have to be followed by a perforation or penetration of the cancer or trauma and then a bleeding therefrom. That, of course, concerns rather the degree of severity of the trauma and of the extent of the aggravation caused thereby. Necessarily, the location of the disease, the protection afforded by other tissues and organs of the body are important considerations. Nevertheless, the injuries inflicted by the trauma to the diseased tissues may have been to a lesser degree and extent and of a milder nature and thereby not have produced in such a pronounced manner the symptoms additionally relied upon by these experts.
Plaintiff's position, that the trauma to his abdomen was sufficient to and did activate, accelerate and aggravate his previously existing physical infirmity and as a result of which he is totally and permanently incapacitated within the purview of the provisions of the Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq., so as to entitle him to the benefits thereof, finds support in Professor Malone's "Louisiana Workmen's Compensation Law and Practice", as well as in the decisions of the appellate courts of this State.
For instance, Professor Malone, on page 278, Sec. 232 of said work, says:
"The courts have firmly established the principle that the employer must take the worker as he finds him. The worker who is abnormally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would have caused little or no harm to a healthy worker. It is *618 not important that the diseased or weakened condition might alone have eventually produced disability or death. To take into consideration the health deficiencies of the employee would destroy at once the beneficial scheme of the Act.

* * * * * *
"Custer v. Higgins Industries ([La. App.] 24 So.2d 511) is particularly indicative of the wide scope of the protection which is afforded deficient employees under the Act. Vath, the worker, was suffering from a malignant peritoneal tumor. One day on the job he braced his elbows against his abdomen in order to lift a skylight hatch door. Recovery was allowed upon the basis of medical testimony that the slight pressure on the abdomen caused by the lifting was sufficient to accelerate the progress of the tumor to inevitable death. Similarly, disability or death may be precipitated by a relatively slight accident event affecting cancer, arteriosclerosis, arthritis, tuberculosis, prostatitis, among others.
"In the cases considered above the deficiency of the employee served to make him peculiarly susceptible to an accident; he was hurt by an event which might well prove harmless to the healthy worker. Similarly, the condition of the worker may be such that peculiar complications flow from a hurt which would prove much less disastrous for the average worker. The leading case of Behan v. John B. Honor Company (143 La. 348, 78 So. 589, L.R.A.1918F, 862) allowed recovery of a worker who died of locomotor ataxia following a fall. The court found that although the dormant disease may have eventually developed to the fatal state by itself, the shock of the accident activated the disease and accelerated the death of the employee.
"Usually, the aggravation of a disease is combined with serious traumatic injuries, as in the Behan case. However, the principle of the Behan case has been extended to cases where the only disabling effect of the accident is to arouse or accelerate the disease. In Brooks v. Lewis-Chambers Construction Company ([13] La. App. [402] 1930, 128 So. 321) the claimant received a blow in the abdomen and later became deaf. Compensation for the loss of hearing was awarded on a finding from the medical testimony that the blow activated dormant syphilis which caused the deafness."
In Causey v. Kansas City Bridge Co., La.App., 191 So. 730, 732, it appears that Causey sustained an injury while performing services for his employer in the construction of the Mississippi River bridge at Baton Rouge. Heavy rocks and stones were being unloaded in the river to serve as foundations for the bridge piers and, while straining and lifting or pushing one of these heavy rocks, plaintiff strained himself causing a severe pain and serious injury in the lower abdominal region, resulting, as contended, either in the formation of a cancer or the aggravation and activation of a pre-existing dormant cancerous growth in the lesser curvature of the stomach, from which he died slightly more than two months following the accident. The defense was that Causey's death was due solely from the malignant cancer without any connection whatsoever with his employment. The record there disclosed that Causey most certainly must have had a pre-existing malignant stomach cancer prior to the injury. In passing upon the principal issue, the court stated: "The next question to determine is whether or not Causey's injury had the effect of activating the cancer from which he died. As set forth in the trial court's reasons for judgment, it is clear from the testimony of witness after witness, including fellow employees, relatives, and acquaintances, that prior to the accident Ralph Causey had always been in apparent good health and physically able and fit *619 to do and perform hard manual labor, and that subsequent to the accident he went into a shocking and rapid decline; that he grew pale, weak and emaciated and his condition steadily grew worse until his death on February 5, 1938. Dr. Lorio, who acted as physician in examining company employees, testified that he was instrumental in securing employment for Causey with the defendant company, and that he was in normal health at the time he was employed. We agree with the trial judge that Ralph Causey's sudden lapse into complete disability on the occasion when he was unloading these heavy rocks, when always prior thereto he had been a vigorous, active, hardworking laborer, is rather convincing that he at that time suffered a severe strain which must necessarily have had serious effect on the cancerous growth. That conviction is strengthened by the medical testimony to the effect that a blow or strain could aggravate or activate a dormant cancerous growth." (Emphasis supplied.)
To the same effect is the holding in Broussard v. Union Sulphur Co., 5 La. App. 340, wherein the court, with reference to a similar situation, observed:
"* * * it is not contended by plaintiff that the injury which her husband received, caused or originated the cancer from which he died. Her contention is that the injury he suffered, excited, set in motion or activated the cancerous cells which resulted in a cancerous growth and the spreading of the disease in his system, finally resulting in his death. It is not disputed that the cancer of which Mr. Broussard died was in his lymph or axillary gland, which is located in the armpit. The cancerous cells were indisputedly there at the time of the accident, as the experts all agree that the injury could not have caused or originated the cancer. Therefore, the question is as to whether these cancerous cells were at that time in a dormant or quiescent condition and that by the injury or its effects, were activated, excited or set in motion, thus starting them on their mission of destruction. It is on a determination of this issue, as we understand the case, that its proper solution depends."
The court concluded that the widow was entitled to recover compensation for the death of her husband where it was shown that he was afflicted with a dormant disease when he suffered the injury which caused this disease to develop into a malignant cancer, causing his death. The condition previously existing was held to have been aggravated by the injury.
In the Behan case, cited by Professor Malone, the plaintiff was employed as a longshoreman for the defendant and while attempting to remove a skid from the ship to the wharf slipped and fell into the river, striking his head and spine against wooden piling or stringers. At the time of the trial plaintiff was afflicted with locomotor ataxia, which, it was testified, could not have been caused or produced by the accident. There was, however, no proof that plaintiff would have ever been disabled on account of said disease had it not been for the accident. Before the accident plaintiff was in ordinary, good health, attending to his daily occupation, working regularly, earning good wages and supporting his family, unconscious of the fact he was diseased. This was apparently one of the first cases of this nature to reach an appellate court of this State, and as to the evidence offered in support of the defense urged, the court stated:
"The proof goes no further, in support of the defense of this suit, than to show that the plaintiff might, and perhaps would, at some time, have become disabled by the disease that was lurking in his system, even if the accident complained of had not happened. And that is not much more of a defense than to say that every man must some day come to the end of his worldly career, accident or no accident.

*620 "The evidence leaves no doubt that the plaintiff's physical disability resulting from the accident is worse than it would be if he had not been diseased at the time of the accident. But the accident was, none the less, the proximate cause of the present disability. We are not aware of a decision of this court on the subject, but it is well settled in the jurisprudence elsewhere that the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces physical disability. See Hilliard v. Chicago City Railway Co., 163 Ill.App. 282; Larson v. Boston Electric Railroad Co., 212 Mass. 262, 98 N.E. 1048."
Custer v. Higgins Industries, La.App., 24 So.2d 511, 515, was a workmen's compensation suit, instituted by the widow of a deceased employee on behalf of herself and three minor children, wherein defendant denied that the employee sustained any injury resulting ultimately in his death. It was contended that the employee's death was due solely to a malignant tumor which existed prior to the day on which he was hurt and the existence of which came to notice only on that date. In the course of its opinion, the court commented:
"It is true that some of the surgeons said that they could not say positively that the development of the tumor had been accelerated by that happening, but it is certain from the reading of the opinions of these surgeons that they thought that this acceleration had taken place.

* * * * * *
"Here, however, the medical evidence shows that the doctors evidently felt that there is even more than a probability that the progress of the tumor was accelerated by the occurrence.
"Of course, the doctors do not say positively that such was the case, but if absolute certainty in such a case is to be required, then in many, if not in most cases of internal injuries, there can be no recovery, because seldom can a physician say with absolute certainty that such an internal injury was caused by a designated external happening. Where, here the record shows that the doctors are evidently of the opinion that the effect on which the claim is based is the result of the cause which is relied upon, we think that that opinion must be accepted. Particularly is this true where the sequence of events is so significant. Until March 2nd, 1944, the plaintiff was apparently perfectly healthy and normal. On that day the pressing of his elbows against the abdomen caused a sudden pain. Shortly thereafter, the pain became worse and it developed that he was suffering from a tumor, and with great rapidity the tumor grew and, in a few months, caused his death.

* * * * * *
"The whole story evidences the fact that the happening on that day accelerated the growth of the tumor. If it did, there can be no doubt of the right to recover, because for many years it has been held that, even though the accident might not have produced disability except for the condition of the employee, nevertheless, there can be recovery if the accident accelerated or lighted up the dormant physical condition and thus produced disability. In Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A.1918F, 862, the Supreme Court found that the employee had suffered from locomotor ataxia long prior to the accident and that the accident caused `the immediate change in his physical condition * * *.' The court then found that the accident had thus caused `the disability of which he complains' and held that the employee was entitled to compensation. That result has been followed in this State ever since."
Vautrot v. Maryland Cas. Co., La.App., 32 So.2d 500, 504, is a suit for compensation *621 for injuries sustained by plaintiff in the employ of the Aluminum Ore Company, defendant's insured. Plaintiff was injured while descending a flight of stairs when he slipped and slid from the top of the stairs to the bottom. On reaching the lower floor plaintiff was lying in a twisted position on his right side and complained of severe pain in his back midway between his shoulders. The accident produced serious injuries to his spinal column, in addition to which there was a complete collapse of the 6th dorsal vertebra due to its destruction by a giant cell tumor. Dr. Guy A. Caldwell performed an operation to relieve this condition. The question was one of causal connection between the accidental injury and the aforesaid disease to the vertebra. In referring to Dr. Caldwell's testimony, the court stated:
"After expressing an opinion that either one or two things may have happened, he is asked the question `In either case, there would be a definite relationship to a greater or less extent, between the fall and the tumor?' to which he answers: `Yes, if there were continuing symptoms from the time of the fall through the time of the severe symptoms which indicated the actual collapse of the vertebra, you would have to think of the two as being related.' Aside from that opinion expressed from a medical viewpoint, to us laymen this is the most reasonable hypothesis and, in the absence of any other hypothesis on which to base the real and actual cause of plaintiff's condition, we say it is sufficient evidence to support plaintiff's claim."
The court concluded that plaintiff's disability was caused by the accident, and, as the accident was the original cause of his condition, there was a causal connection between the accident and the collapse of the vertebra.
Although there is a conflict in the medical testimony as to whether plaintiff's pre-existing condition was aggravated by the trauma to his abdomen, yet, to our minds, one of the strongest, single factors supporting plaintiff's claim is that until the very date and moment of the accident and for several years prior thereto, he was in apparent good health, robust, strong, able to do and doing heavy, strenuous labor. From that day and moment forward he has been totally and completely disabled and unable to perform any work of a reasonable character. There must have been a cause for this sudden change. Plaintiff has advanced a substantial reason for such change. The evidence preponderates in his favor. No contrary view is urged by defendants other than that plaintiff had a pre-existing carcinoma of the stomach, which, notwithstanding the accident and injury sustained by plaintiff, was the sole and only ground for plaintiff's condition and that such disease could not be and was not aggravated, activated or accelerated by the injury received in the aforesaid accident. Similar defenses have been urged to no avail in other cases, as is shown by the authorities cited and quoted hereinabove in addition to which may be cited: Renfrow v. Caddo Parish Police Jury, La. App., 155 So. 291; Murray v. Mengel Co., La.App., 9 So.2d 818; Weaver v. Mansfield Hardwood Lumber Co., La.App., 4 So.2d 781; Books v. Keen & Woolf Oil Co., 9 La.App. 288, 120 So. 99; Brim v. Home Acc. Ins. Co., 15 La.App. 681, 131 So. 762; Dow v. Stanolind Oil & Gas Co., La.App., 9 So.2d 828.
It therefore follows that the judgment appealed, so far as awarding plaintiff compensation as for total and permanent disability and in the award of $222 for hospital and medical expenses, is, in our opinion, correct and should be affirmed. It is contended, however, that in plaintiff's condition further medical expenses will necessarily have to be incurred. Of course, judgment could not be awarded in his behalf for any additional medical expenses prior to the incurrence of such expense. His right to the difference between the allowance herein made and the statutory maximum of $1,000 should be reserved to him.
*622 Plaintiff also urges that the judgment should be further amended by the allowance, as against the Security Mutual Casualty Company, the employer's insurer, of penalties and attorney's fees, as provided in LSA-R.S. 22:658, for its arbitrary and capricious failure to pay compensation. While the record discloses a considerable basis for plaintiff's complaint, a consideration of the entire record leads us to the conclusion that defendant's position was not so untenable as to classify its failure to pay compensation as arbitrary or capricious or that it acted without probable cause in presenting its defense to the court for determination. For these reasons, we concur in the conclusion reached by the trial court.
Accordingly, the judgment appealed is amended so as to reserve to plaintiff his right to the maximum statutory limit of $1,000 for medical expenses, less the allowance of $222 awarded by the district court, and, as so amended, is affirmed at appellant's cost.
Amended and affirmed.