131 So.2d 585 (1961)
Aurelis ANDREPONT, Plaintiff-Appellant,
v.
CALCASIEU PAPER COMPANY, Defendant-Appellee.
No. 237.
Court of Appeal of Louisiana, Third Circuit.
June 19, 1961.
Rehearing Denied July 12, 1961.
*586 Tate & Tate, by Donald J. Tate, Mamou, for plaintiff-appellant.
Plauche & Plauche, by S. W. Plauche, Jr., Lake Charles, for defendant-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
TATE, Judge.
This is a suit for workmen's compensation benefits. The plaintiff alleges that he is disabled because of the aggravation of a heart condition by an accident at work. He appeals from the dismissal of his claim.
The evidence shows that the plaintiff had been employed for approximately six years performing duties in the "beater room" in the defendant's paper plant. These duties involved throwing pieces of scrap paper, sometimes heavy but more often not, into a low container (or "beater"), which processes this material for re-use in the manufacture of paper. The working conditions in the beater room were often hot and occasionally involved the use of steam to remove the chemicals from the re-used scrap paper.
According to the plaintiff's testimony, a pain in the plaintiff's chest which had commenced at work a few days earlier (Tr. 461), but which subsided with rest, became so bad at work on March 20, 1959 that the plaintiff left the defendant's plant approximately an hour after he had gone on duty, and with leave of his foreman went home as being sick. (The plaintiff stated that this incident followed two days of work with "wet strength" paper, involving the use of steam and heavier work than normal.) The plaintiff returned home to Mamou, spent a day in bed, and on the next following day reported to Dr. Hubert Prevost, then of that town, who found the plaintiff's blood pressure greatly elevated and referred the plaintiff to the Veterans Administration hospital in Alexandria. The plaintiff was there hospitalized between March 23rd, and April 13, 1959, when he was discharged as improved. From that date until at least the trial in June of 1960, the plaintiff has been treated for his heart condition by Drs. Prevost and Savoy.
In dismissing the plaintiff's suit the trial court concluded, after a lengthy and scholarly opinion:
"In summary, plaintiff has failed to carry the burden of proving that an accident occurred in the course and scope of his employment. On the contrary it has been proven that plaintiff continues to suffer from hypertension and high blood pressure with which he has suffered symptoms for some 27 years prior to the alleged accident; that his symptoms are no different now than they have been from the day plaintiff checked in with the Veterans Administration on August 31, 1953. Therefore, plaintiff cannot recover."
Basically, the plaintiff's position is that he has proved his total disability because the almost undisputed medical evidence reveals that he is now considered medically disabled from performing hard manual labor, whereas in fact he had done so for six years prior to the present accident. The defendant's position is that the medical testimony undoubtedly reveals that plaintiff has for many years suffered from high blood pressure and a hardening of the arteries, and that he has had repeated other episodes of heart pain, so that the plaintiff is no more *587 disabled at the present than he was prior to the incident of March 20th.
No useful purpose will be served in re-analyzing the medical and lay testimony in this extensive record, which was to a great extent summarized by our learned trial brother. Suffice it to say, we agree with the lower court's conclusion that the plaintiff has not borne his burden of proving that his present disability is greater than that which pre-existed the incident at work of March 20, 1959, and that we do not find to be manifestly erroneous the District Court's determination that the subjective pains, of which the plaintiff now complains, are no more disabling than those of which the plaintiff complained for several years before the accident and even prior to his employment by the defendant. For the reasons noted by the trial court, we do not accept the plaintiff's contention that the pre-1959 pains of which the plaintiff complained were the result of a gall bladder rather than a cardiovascular condition.
On the other hand, we cannot agree with our learned trial brother that the plaintiff has not sustained an accident within the meaning of the compensation statute. For as was recently restated, with extensive citation of authority, in Talbot v. Trinity Universal Insurance Co., La.App. 1 Cir., 99 So.2d 811, 818, certiorari denied:
"`The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable. * * * While it has been said a heart attack is not an accident within the purview of the Workmen's Compensation Law, LSA-R.S. 23:1021 et seq., yet, if an employee had a pre-existing heart condition which is aggravated by his work, excessive heat, intense hard labor, sudden fright or attack, or any other stress that might aggravate such condition and cause disability or death, such resulting disability or death would be compensable under the statute.'"
See also: Cutno v. Neeb Kearney Co., 237 La. 828, 112 So.2d 628.
The uncontradicted evidence indicates that the plaintiff left work because of greatly aggravated chest pain following exertion in the performance of his duties, was examined within two days by his family physician with a report of such work-induced aggravation, and was immediately hospitalized in the Veterans Administration hospital because of consistent complaints of chest pain; that the Mamou and Veterans Administration examining physicians found his blood pressure greatly elevated; and that the Veterans Administration hospital found that his "initial ECG was definitely abnormal" and that another heart test, the Master's two-step,[1] "was definitely positive". (Tr. 163.) Upon his release from the latter hospital as "improved", it was recommended by the attending physicians "that the patient should pursue a somewhat restricted type of work". (Tr. 163.)
While able counsel for the defendant points out that the plaintiff did not for several months claim in conversation or correspondence with the defendant's representatives that the heart condition was *588 work-connected, nevertheless the uncontradicted medical and lay testimony indicates that the heart condition immediately following March 20th was disabling and was aggravated by the plaintiff's exertion at work.
The examination at plaintiff's request by Dr. Craig, internist, on October 6, 1959, and at defendant's request by Dr. Anderson, internist, on May 13, 1960, indicates that plaintiff's physical and heart condition was within normal limits and that the EKG and Master's Two-Step tests for heart disorder produced negative results. Besides elevation in blood pressure, the only symptom then of disability was his subjective complaints of pain which (as earlier stated) the trial court did not accept as accurate.
As the trial court noted, upon learning of the plaintiff's prior medical history, Dr. Craig felt it was not possible that the plaintiff "was totally and permanently disabled by reason of any exertion he underwent on March 20, 1959". (P. 29, Craig deposition; Tr. 65). But while he testified that the strenuous work on that date did not aggravate the pre-existing hypertension insofar as the "aggravation persisted indefinitely", he also stated that "the normal response to activity is an elevation of blood pressure, therefore if one has an elevated blood pressure to begin with it will aggravate that by causing it to go from high to higher" (Tr. 62) and that in such sense the plaintiff's "pre-existing hypertension may have been aggravated at the timethe time there referring to the time that he developed this complaint back on the 20th of March 1959by the strenuous work in which he was involved" (Tr. 57).
Besides the above-mentioned doctors, the only physicians who examined and treated the plaintiff following the incident of March 20, 1959, were Drs. Savoy and Prevost, general practitioners and surgeons. Although their testimony and office records were somewhat vague as to dates, it appears that they have been treating the plaintiff for cardiovascular disease since his discharge from the VA hospital. These doctors believe that the plaintiff cannot perform the hard manual labor in which formerly employed and that he is more disabled than before by reason of "angina pectoris" (literally, pain in the chest), due primarily to an inadequate supply of blood to the heart upon exertion (when the heart requires more blood) because of the plaintiff's hypertension (high blood pressure) and the hardening (narrowing) of the plaintiff's arteries.
However, Dr. Savoy had treated the plaintiff for over twenty years, and he essentially admitted that he could not state that the plaintiff is now more disabled than he was prior to the March 20th incident. Dr. Prevost first saw the plaintiff professionally immediately following the March 20th incident, and he likewise admitted that there has been an improvement in the plaintiff's condition over the course of the treatment (which improvement, however, he ascribed to rest and medication.)
As earlier stated, we agree with the trial court that the plaintiff did not at the trial of this suit in June, 1960 prove any permanent aggravation of his pre-existing cardiovascular condition, and we therefore affirm the trial court's dismissal of this claim for compensation benefits for total and permanent disability. But in our opinion, to repeat, the plaintiff has proved his initial disability following and as caused by the March 20th incident at work, which initial disability is objectively corroborated by the plaintiff's greatly elevated blood pressure at the time, and by the abnormal EKG and the positive Master's Two-Step tests upon admission to the Veterans hospital shortly afterwards, as well as by the plaintiff's consistent and uncontradicted complaints of chest pain as coming on while performing hot and heavy work, both to the examining physicians and to lay witnesses.
The medical testimony indicates that a patient with the plaintiff's cardiovascular condition may have temporary flareups of heart pain and disability, which will subside *589 with rest and treatment. (In fact, the plaintiff's medical and working history indicates that before 1959 he had at least two such temporary aggravations into disability of his otherwise non-disabling cardiovascular disease.) Although Drs. Savoy's and Prevost's testimony indicates a continued disability beyond such date, nevertheless in considering the record as a whole, we think that, in the somewhat arbitrary determination of the ending of this temporary disability, it will be fair to accept Dr. Craig's testimony that by October 6, 1959, there were no further symptoms of this disability (except for subjective complaints which the trial court did not accept as well-founded).
We conclude therefore that the plaintiff is entitled to workmen's compensation benefits, including the cost of reasonable medical treatment incurred during such interval, from March 20th, 1959, the date of the work-induced disability, up to and through October 6, 1959, the date that we find the temporary disability terminated.
For the foregoing reasons, the judgment of the trial court is amended to award the plaintiff compensation at the rate of $35 per week commencing March 20, 1959 and ending October 6, 1959, together with legal interest upon each weekly installment from the day of delinquency until paid, and for all reasonable medical expenses incurred for treatment of the plaintiff's disability between these dates. In all other respects, the trial court's judgment dismissing the plaintiff's demand is affirmed. The defendant is taxed with the costs of these proceedings and of this appeal.
Amended and affirmed.
FRUGE, Judge (concurring in part and dissenting in part).
With the majority view that claimant did sustain an accident within the contemplation of the workmen's compensation act I am in full accord and concur therein. However, as to the duration of the disability I must respectfully dissent, in that I feel that the claimant has been totally and permanently disabled from performing the duties of the same or similar work as a result of the accident of March 20, 1959.
It is well settled in our jurisprudence that an employer takes an employee as he finds him.[1] See Lyons v. Swift & Company, La. App., 86 So.2d 613, at page 619. There it was said, quoting from Custer v. Higgins Industries, La.App., 24 So.2d 511, that "`* * * disability * * * may be precipitated by a relatively slight accident event affecting cancer, arteriosclerosis, arthritis, tuberculosis, prostatitis, among others.'" [86 So.2d 618] And "` * * * the principle * * * has been extended to cases where the only disabling effect of the accident is to arouse or accelerate the *590 disease. * * *'" And at page 620 of 86 So.2d "` * * * the fact that a person was already afflicted with a dormant disease that might some day produce physical disability is no reason why he should not be allowed damages or compensation for a personal injury that causes the disease to become active or virulent and superinduces the physical disability * * *'" Moreover, in Circello v. Haas & Haynie Corp., La.App., 116 So.2d 144, 146, it was held that:
"* * * As plaintiff contends, an injury is compensable if an incident at work precipitates or accelerates a preexisting pre-disposition or disease into becoming a present disability, or contributes to activation of such a latent condition into disability. * * * Likewise, a residual condition is legally disabling and compensable if, as a residual from an accidental injury, the possibility of a reoccurrence of a disabling condition upon a return to work is substantially increased as a result of the accident, as compared with the danger of such occurrence being caused by performance of the work before the accident. * * *"
It appears to me that the possibility of a reoccurrence, on returning to the "beating room", of the disabling condition is greater now (after the March 20, 1959 accident) than it was before. And the fact that claimant no longer has objective symptomsadmittedly being improved by rest, medication, etc.is no reason to require him to return to the same or similar work, inasmuch as he does have subjective symptoms. And although it is accepted that the heart and body will "compensate" and the objective heart symptoms will disappear (after rest, medication and time, etc.), it is also true that the heart has been damaged and deterioration of the cardiovascular system is accelerated with each such "incident" as in this case. For, and it is common knowledge that one who suffers an "attack" is indubitably on the downgrade so far as his heart is concerned and if he continues doing the very thing which caused the original attack it is more than mere speculation that deterioration will be more rapid in the future, and a possibility of reoccurrence has therefore been increased substantially. In Finn v. Delta Drilling Company, La.App., 121 So.2d 340, 342, we find an analogous case (where a pre-existing and previously unknown arteriosclerosis of the coronary artery existed and lifting at work precipitated a heart attack) in which similar contentions, as here, were made by defendant. The contentions were disposed of thusly:
"[1] Able counsel for the defendants-appellants concedes that an injury is compensable if an incident at work precipitates or accelerates a pre-existing predisposition or disease into becoming a present disability. Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628; Talbot v. Trinity Universal Ins. Co., La.App. 1 Cir., 99 So.2d 811. The thrust of his argument upon appeal is that, even conceding an initial disability, the medical evidence shows that the plaintiff has completely recovered from the initial disability without residual, so that he is entitled to no compensation beyond the period of initial disability. Circello v. Hass & Haynie Corp., La.App. 1 Cir., 116 So.2d 144. Counsel also contends that in any event the imposition of penalties and penalty attorney's fees is unwarranted under the circumstances reflected by this record.
"The appellant's contention that there is no residual disability is founded upon the medical testimony in this record to the effect that the plaintiff's arteriosclerosis, the underlying pathology which (in combination with the incident at work) caused the heart attack, was not aggravated or affected by the incident at work and to the effect that the cardiogram taken in February of 1959 (about three months after the accident) was normal, showing that the *591 claimant had sustained a very small infarction and not very much heart damage. While even though the myocardiogram reflects normal findings the testifying doctors would not recommend the claimant's employment at hard labor because they know of his previous heart attack, the appellants point out that these doctors also stated that neither would they have recommended such employment prior to the heart attack had they known of the latent and underlying arteriosclerosis which was evidenced by the heart attack.

"Thus, appellants argue, the plaintiff's disability is not compensable simply because he now knows it is dangerous for him to perform hard manual labor, whereas before the incident it was equally dangerous for him to perform hard labor because of the thenunknown arteriosclerosis.
"[2] This contention, however, overlooks the unanimous testimony of the three medical witnesses that the heart attack at work produced some permanent damage to the heart muscle not present prior to the incident (Tr. 104, 115, 136). As one of the specialists testified without contradiction in the record, although a human being has more heart muscle than is needed to live and although a heart attack may produce a relatively small loss of heart muscle so that the patient may still be able to function effectively, nevertheless some of the patient's reserve muscle has been taken from him so that succeeding heart attacks will be more dangerous (Tr. 145-6, 147, see also Tr. 126). Thus the claimant's present disability is compensable because `as a result of injuries received from the accident, the hazard to the patient's life and health would be substantially greater if he returned to work after the accident, as compared with * * * the performance of his heavier duties before the accident,' McKnight v. Clemons, La.App. 1 Cir., 114 So.2d 114, at page 116."
Defendant's contention that claimant is no more disabled now than he was prior to the accident is untenable. The fact is, and the record reveals, that, except for the 1958 hospitalization for hypertensive vascular disease, for 6 years prior to this accident in 1959, he otherwise worked without complaint of disability but he is unable to return to substantially the same work that he was doing prior to the incident. Drs. Savoy, Prevost, and Craig, and the Veterans' Administration Hospital doctors recommended work of a lighter nature in the future. Hence, although the disability may have presently subsided, nevertheless, the possibility of a reoccurrence on a continuation of the same work has been enhanced and precipitated by the accident. This (angina pectoris) is one of the steps in the degenerative path to complete heart failure and even if this claimant does not continue the same work he is irreversibly on the down hill path. Furthermore, if claimant was totally and permanently disabled prior to March, 1959 how could he perform his duties, and moreover, and significantly why did the Veterans' Administration Hospital on June 4, 1958, discharge him as able to return to work after hospitalization for less than a month with "hypertensive vascular" disease? Defendant's contention that he is disabled to the same extent that he was prior to March 20, 1959 is not borne out by the record and is specifically refuted by the above.
The majority, as did the lower court, seems to turn their opinion and decision on the theory that the "subjective pain" of itself is not disabling. (The fact that the compensation law does not require one to return to work if the disability causes pain while performing that work is not being applied by the majority or counsel, although it occurs to me that it might possibly be applicable.) Be that as it may we are concerned with heart injury and my impression is that although no objective symptoms are manifested by claimant, the degenerative *592 processes have commenced, even though compensated in this instance, and they are irreversiblehence the possibility of a reoccurrence has been substantially increased as a result of the March 20, 1959 accident.
Furthermore, the fact that his symptoms are no different than when he went to the Veterans' Administration Hospital in 1953, has no bearing on the fact that he did have a heart attack on the job as evidenced by the EKG, and "Masters Two Step", etc., in that they showed positive manifestations of heart injury after the accident. His complaints may be the same, but his heart is not. Moreover, the accuracy of the subjective complaints by claimant is not at issue. The fact of heart damage is. The majority says that Dr. Craig felt it was not possible that the plaintiff was totally and permanently disabled by reason of any exertion he underwent on March 20, 1959 and places great significance on that statement. However, that statement, considered with all Dr. Craig's testimony, implies to me that he would admit that he was totally and permanently disabled, but that if plaintiff had had angina pectoris since 1932 (and Dr. Craig assumed that he had had it since his answer was to a hypothetical question which assumed a history of angina pectoris since 1932) then it would be unlikely that this March 20, 1959 accident caused the disability, he having been disabled prior thereto. This assumed disability prior to the accident, which has been refuted above. It appears that claimant did not have angina since 1932 as seen by Dr. Anderson's testimony that if he had had it since then (1932) then he should be dead. The fact is that plaintiff is not deadtherefore, his anginoidal manifestations must have been something elsepseudo-angina, for instance or gall bladder pains. Dr. Anderson also stated that he didn't believe that the pain since 1932 was angina (as diagnosed by the Veterans' Administration Hospital doctors) and that he can't find anything to indicate it was angina. This is also borne out by the fact that claimant says that after his 1954 gall bladder operation he did not have these painsanginal and gall bladder pains being similar. (After the gall bladder operation the Veterans' Administration Hospital physician stated that the past history of chest pain was not suggestive of angina.) Accepting Dr. Anderson's testimony and the Veterans' Administration record after the operation as true then the diagnosis of angina pectoris was pure speculation on the part of the examining doctors at the Veterans' Administration Hospital prior to the operation of 1954.
It strikes me that the allegedly damaging testimony given by the specialists smirked of a legal determination of the consequences and applicability of the workmen's compensation law. (For instance see discussion of Dr. Craig's statement above.) The accident of March 20, 1959, considering that the employer takes the employee as he finds him, and in view of the painless and symptom free period subsequent to the gall bladder operation for the past six years, except for the 1958 hospitalization; Dr. Anderson's testimony as to "death" of claimant; his work performance; the fact that he had a series of two or three attacks in March, 1959, immediately prior to March 20, 1959 followed by disability; in my opinion, clearly shows that claimant is totally and permanently disabled from returning to the same or similar work without a reoccurrence of the angina pectoris, (disability) within the contemplation of the workmen's compensation act.
For the foregoing reasons I concur in the decree insofar as it holds that claimant suffered an accident on March 20, 1959, but must respectfully dissent as to extent and duration of disability.

On Application for Rehearing.
En Banc. Rehearing denied. FRUGE, J., adhers to original dissent
HOOD, J., believes that the application of defendant for rehearing should be granted.
NOTES
[1] Dr. Anderson, internist, testified that that "Master's Two Steps" was a test by which a suspected heart patient went up and down a set of two-steps for two minutes, immediately following which one electrocardiogram is taken and then five minutes later another electrocardiogram is taken. The purpose of this test is to bring out any changes in heart operation brought about by exertion and to furnish objective proof that heart trouble is the cause of a patient's chest pain. (See Tr. 374, 379.)
[1] The record reveals that claimant has had hypertensive cardiovascular disease or arteriosclerosis for several years. Arteriosclerosis is a condition marked by loss of elasticity, thickening and hardening of the arteries. In this case it is high blood pressure (hypertension) with arteries that have hardened and decreased in size so as to restrict the blood flow in the immediate area where it has occurred (the heart). Claimant suffered an attack of angina pectoris on March 20, 1959. Angina Pectoris is a disease marked by paroxysmal thoracic pain, with a feeling of suffocation and impending death, due, most often, to anoxia of the myocardium and precipitated by effort or excitement. Anoxia is an oxygen deficiency; a condition in which the cells of the body do not have or cannot utilize sufficient oxygen (O2) to perform normal function. Myocardium is the muscular substance of the heart; the heart muscle. (A condition marked by precordial pain due to vasomotor disturbance and showing no organic disease of the heart is commonly referred to as pseudo-angina, or vasomotor angina, or mock angina, or spurious angina, or false angina.) Although "compensation" does occur after an attack of angina pectoris, nevertheless, it is a degenerative disease. Compensation is the counterbalancing of any defect of structure or function. Here it is compensation of the myocardium, but with a degenerative situation existing so that the likelihood of a reoccurrence is an obvious conclusion.